S96A1329. WILLIAMS v. THE STATE.
(477 SE2d 570)

THOMPSON, Justice.

Chester Williams was convicted by a jury of felony murder, three counts of aggravated assault, and four counts of possession of a firearm during the commission of a crime. He appeals from the denial of his motion for new trial.[1]

On the night in question, Williams had been out with a group of his friends at the Cool Inn in Washington, Georgia. Also congregated outside the Inn was a group of men from Elberton, Georgia. Several days earlier, Williams and one of the Elberton men had exchanged angry words, and Williams promised, "I'll be back." Upon seeing the

---

[1] The crimes occurred on September 13, 1991. Williams was charged on February 4, 1992, in a nine-count indictment with malice murder; felony murder while in the commission of an aggravated assault; three counts of aggravated assault upon three other individuals; and four counts of possession of a firearm during the commission of a felony. Trial commenced on May 11, 1992. On May 13, 1992, he was found guilty of all offenses with the exception of malice murder. He was sentenced on the same day to life imprisonment for felony murder, plus ten years on the other charges to run consecutively. The trial court allowed an out-of-time motion for new trial to be filed on June 22, 1992. On the same day, Williams also filed a pro se notice of appeal to the Court of Appeals. Lacking jurisdiction, that court transferred the case to this Court on September 24, 1992 (*Williams v. State*, S93A0012). Because of the pendency of the motion for new trial below, the appeal was stricken from our docket with direction that it may be redocketed upon a ruling in that matter. On December 7, 1992, the motion for new trial was amended and Williams was granted leave to proceed pro se with appointed counsel remaining in the case to assist him. Another amendment was filed on January 28, 1993. On February 8, 1994, Williams moved for appointment of substitute counsel to represent him in the new trial proceedings, and for termination of his prior appointed attorney. On February 11, 1994, the trial court granted the motion and appointed new counsel to represent Williams in his motion for new trial and on appeal. The motion for new trial was denied on February 22, 1996. A notice of appeal to the Court of Appeals was filed on March 14, 1996, and amended on April 12, 1996 to reflect an appeal to this Court. The case was docketed in this Court on May 8, 1996, and was submitted for decision on briefs on July 1, 1996.

Elberton men on the night of the shooting, Williams asked one of his companions to drive him to a location where he could get a gun. Armed with a revolver and accompanied by a group of his friends, Williams drove a truck around town in search of the Elberton group. He told a friend who came along that they were going to shoot at the group from Elberton. That man jumped off the truck when he learned the purpose of the trip. When Williams came upon the Elberton group at a mobile home, he and his co-defendant, Butler, rapidly opened fire in their direction. The victims attempted to flee, but one person was killed in the shooting, and three others were injured. An acid absorption test performed later disclosed that Williams and Butler had recently fired a gun.

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to find Williams guilty of the crimes for which he was convicted.

2. Williams asserts that the trial court erred in charging the jury on the law of conspiracy because the indictment did not charge a conspiracy, and there was no evidence to support it.

A conspiracy may be proven and a jury charge may be given on conspiracy, even though a defendant is not indicted under that theory. *Huey v. State*, 263 Ga. 840, 842 (3) (439 SE2d 656) (1994).

> A person commits conspiracy "when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." OCGA § 16-4-8. The essence of conspiracy under OCGA § 16-4-8 is an *agreement*, and that agreement . . . may be a mere tacit understanding.

*Drane v. State*, 265 Ga. 255, 257 (4) (455 SE2d 27) (1995). Not only did Williams reveal to his friend who was along for the ride that it was the intent of his group to shoot at the Elberton men, but Williams also confirmed this through his own testimony. He testified in his own defense that he had previously argued with the Elberton men, that on the night of the shooting he borrowed a gun from a friend, that the group planned to ride by and scare the Elberton men, and that he was on his knees on the floorboard of the truck when he fired twice at the victims. His co-defendants also testified that they intended to shoot at and scare the victims. The evidence, even if slight, was sufficient to support an inference that Williams, Butler and their cohorts had at least a tacit understanding to shoot at the Elberton group. Id.

3. Williams asserts that the trial court improperly allowed the introduction of testimony concerning his argument with the Elberton men several days prior to the shooting. He complains for the first

time on appeal of the State's failure to provide notice of its intent to present evidence of prior difficulties under the procedure set forth in *Maxwell v. State*, 262 Ga. 73 (414 SE2d 470) (1992).

We agree with the State's assertion that the issue was not properly preserved for review. No objection was made when the prosecution questioned one of the victims concerning a prior altercation between himself and Williams. Two other witnesses also testified, without objection, that the earlier altercation had taken place. By failing to object at trial, Williams cannot raise the issue on appeal. *Hartman v. State*, 266 Ga. 613 (2) (469 SE2d 163) (1996).

4. Williams testified on direct examination that upon seeing the Elberton men at the Cool Inn on the evening of the shooting, he "went and got a gun from a guy." He identified it as a small handgun — "a .32 or a .22." Because a ballistics expert had identified one of the bullets as coming from a .38 caliber gun, on cross-examination Williams was asked whether he ever told the police about the gun he had borrowed so that it could be tested. Williams now argues that the question violated his constitutional right against self-incrimination by implying that he did not cooperate in the investigation of the charges against him.

Williams did not object at trial to the questions posed on cross-examination. In fact he answered the questions in the negative and admitted that he had never before disclosed the size of the gun he was carrying. Accordingly, he did not preserve this issue for review. But even if objected to, the question was properly posed in an effort to discredit Williams' direct testimony.

5. Williams claims he was denied effective assistance of trial counsel in four respects: (1) trial counsel failed to sufficiently investigate the facts; (2) failed to present the case in a competent manner; (3) failed to adequately·prepare Williams to testify at trial; and (4) committed serious tactical errors during the trial.

An evidentiary hearing was held on the motion for new trial, at which time Williams was represented by appellate counsel. Trial counsel testified that he had practiced criminal law for sixteen years, formerly as an assistant district attorney; and that he had tried approximately seventy-five criminal cases, including numerous murder prosecutions and four capital cases. He was familiar with the law of conspiracy and transferred intent. In preparation for trial he visited the Cool Inn and interviewed several witnesses over a period of two days. He elected not to present their testimony at trial because they were not particularly favorable to the defense, and offering such testimony would deprive the defendant of concluding closing argument. Counsel adequately explained other such tactical trial decisions. Finally, he provided Williams with "extensive" preparation for trial.

Williams failed to demonstrate that counsel's performance fell below an objective standard of reasonableness and prejudiced his defense under the standard of *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 12, 1996.

*M. V. Booker,* for appellant.

*Dennis C. Sanders, District Attorney, Michael J. Bowers, Attorney General, Beth Attaway, Assistant Attorney General,* for appellee.