## A99A1955. MIDDLEBROOKS v. THE STATE.
### (526 SE2d 406)

BARNES, Judge.

Larry Rashad Middlebrooks was convicted of hijacking a motor vehicle and sentenced to serve 15 years, consecutive to a life sentence he was already serving for armed robbery. He appeals, contending the trial judge erred in allowing the State to strike two black potential jurors; in allowing a police officer to read Middlebrooks' custodial statement to the jury and give hearsay testimony; in charging the jury on conspiracy; in failing to charge theft by receiving a stolen motor vehicle as a lesser included offense; and in sentencing him to serve fifteen years instead of ten. We disagree and affirm.

Viewed in the light most favorable to the verdict, the evidence at trial showed that Middlebrooks was a passenger in his cousin's car when his cousin, Antwain Harps, drove into a parking lot and stopped next to a Honda Accord. Harps got out of his car, pulled a gun on the Honda driver, and told him to get out of the car and walk away. The driver did so, and Harps drove away in the Honda while Middlebrooks drove away in Harps' car. The two met back at their house; Middlebrooks then drove the two of them to a bank in the stolen Honda. Harps robbed a bank employee at gunpoint, and Middlebrooks drove them from the scene in the Honda. They abandoned the car, divided the money, and split up. Middlebrooks was arrested later that evening and gave a statement admitting he and Harps planned the hijacking and bank robbery.

1. Middlebrooks contends that the State exercised two of its peremptory strikes in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). After Middlebrooks made his motion to disallow three of the State's strikes, the State explained that it struck one juror, a black male, because he had a previous violent arrest; struck another juror, an Asian female, because her responses were clipped and cold; and struck a third juror, a black male, because he seemed reluctant to be there. The trial court granted the motion as to the last juror, but found the State's explanations concerning the first two strikes to be sufficiently race-neutral.

Because the trial court's findings are not clearly erroneous and

Middlebrooks has failed to prove that the State acted with discriminatory intent in exercising its peremptory challenges, we conclude that there was no *Batson* violation. See *Turner v. State*, 267 Ga. 149, 153 (476 SE2d 252) (1996); *Lingo v. State*, 263 Ga. 664, 669 (437 SE2d 463) (1993).

2. Even though no transcript of the *Jackson-Denno* hearing is in the record, Middlebrooks also contends that his unrebutted testimony at the hearing established that an unidentified police officer promised him that he would be released if he told the truth. Therefore, he alleges that the trial court erred in allowing his custodial statement to be read to the jury because the statement was involuntary as it was made with the hope of benefit. Without a transcript of the *Jackson-Denno* hearing, however, we must assume the trial court's findings were supported by the evidence and the trial court's actions during the hearing were appropriate. *Smith v. State*, 266 Ga. 687, 688 (470 SE2d 436) (1996); *Miller v. State*, 219 Ga. App. 284 (1) (464 SE2d 860) (1995).

In any event, whether to admit the incriminating evidence turned solely on Middlebrooks' credibility. The trial judge resolved this issue in favor of admissibility, and we must accept the trial judge's factual and credibility determinations made after a suppression hearing unless they are clearly erroneous. *Johnson v. State*, 233 Ga. 58 (209 SE2d 629) (1974); *Tucker v. State*, 231 Ga. App. 210, 212-213 (1) (a) (498 SE2d 774) (1998). The judge's determination here is not clearly erroneous, and we find no error in the admission of Middlebrooks' inculpatory statement at trial.

3. Middlebrooks asserts that the trial court erred in charging the jury on the full text of the hijacking statute and in charging them during deliberations on the conspiracy statute, because he was charged only with having completed the crime, not conspiring to commit it. Since he was not indicted for conspiracy, he argues, the court should not have given the jury the opportunity to convict him of conspiracy, either by reading the entire statute or charging them with the definition.

The hijacking statute, which the trial court read to the jury during its main charge and then recharged pursuant to a question during deliberations, provides, "A person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so." OCGA § 16-5-44.1 (b). During the charge conference, the trial court indicated it would not give the State's request to charge on conspiracy, finding its concepts were covered in the State's request to charge on parties to a crime. However, during deliberations the jury asked the court to elaborate on the use of the word

"conspiracy" in the hijacking statute, and the court read the definition to them.

"A conspiracy may be proven and a jury charge may be given on conspiracy, even though a defendant is not indicted under that theory." *Williams v. State*, 267 Ga. 308, 309 (2) (477 SE2d 570) (1996); *Hamby v. State*, 158 Ga. App. 265 (2) (279 SE2d 715) (1981). The specific statutory inclusion of conspiracy as a method of committing the crime of hijacking a motor vehicle does not alter the general rule that a conspiracy can be proven and charged without being indicted.

Further, while Middlebrooks contends that he was denied the opportunity to discuss conspiracy during his closing argument, "it was incumbent on him to request to reargue after the charge. Failure to do so acts as a waiver." *Hall v. State*, 259 Ga. 243, 245 (4) (378 SE2d 860) (1989); *Williams v. State*, 176 Ga. App. 503, 505 (1) (336 SE2d 367) (1985).

Finally, the trial court charged the jury without objection on parties to a crime, which is substantially similar to the conspiracy charge. See *Drane v. State*, 265 Ga. 255, 258, n. 4 (455 SE2d 27) (1995) (main reason to proceed under conspiracy theory rather than party to crime is to take advantage of conspiracy exception to hearsay rule); *Osborn v. State*, 161 Ga. App. 132, 133 (1) (291 SE2d 22) (1982) (evidence authorized conclusion that defendant was "a party or a conspirator" to a drug sale). We find no error in the trial court's reading of the entire hijacking statute or defining conspiracy in response to a jury question.

4. Middlebrooks argues that the trial court erred in refusing to charge theft by receiving a stolen motor vehicle as a lesser included offense of hijacking a motor vehicle. The evidence showed that Middlebrooks waited in his cousin's car while his cousin pulled a gun on the Honda owner, then drove his cousin's car to their house. The two men met, and Middlebrooks drove the hijacked car to a bank where the two committed armed robbery, then Middlebrooks drove the hijacked car away and dumped it. "Theft by receiving is not a lesser included offense of theft by taking. . . . The offense of theft by receiving is intended to catch the person who buys or receives stolen goods, as distinct from the principal thief." (Citations omitted.) *Sosbee v. State*, 155 Ga. App. 196, 197 (270 SE2d 367) (1980). We believe the same rationale applies here and conclude that theft by receiving a motor vehicle is not a lesser included offense of hijacking a motor vehicle.

5. Middlebrooks asserts that he should have been sentenced to serve no more than ten years, pursuant to OCGA § 16-4-8, the conspiracy statute. However, Middlebrooks was indicted, convicted, and sentenced under OCGA § 16-5-44.1 (c), which provides for a sentence of "not less than ten nor more than 20 years." Therefore, the trial

court did not err in sentencing Middlebrooks to serve 15 years, consecutive to his life sentence for armed robbery.

*Judgment affirmed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED DECEMBER 1, 1999 —

*Lloyd J. Matthews*, for appellant.

*Robert E. Keller*, District Attorney, *Bonnie K. Smith*, Assistant District Attorney, for appellee.