## A06A1123. HICKS v. THE STATE.
(636 SE2d 183)

SMITH, Presiding Judge.

Willie Floyd Hicks was convicted by a Spalding County jury of aggravated assault. His motion for new trial was denied, and he appeals, asserting as error the general grounds and the admission into evidence of his statement to police. Finding no error, we affirm.

1. We first consider Hicks's assertion of the general grounds. Construed to support the verdict, the evidence shows that Hicks, the victim's boyfriend, lived with the victim and her daughter and paid rent to her. On the night of the incident, Hicks demanded sex from the victim, who told him that she was putting her daughter to bed and would be with him when the child fell asleep. After her daughter went to sleep, the victim went into the room where Hicks was, and he suddenly hit her in the temple with a flashlight. When she tried to crawl away, Hicks began to cut the victim repeatedly on the arms, body, and leg while shouting and threatening to kill her. The victim testified that no one else but her daughter was in the house. Hicks eventually stopped attacking her when her daughter exclaimed, "Stop cutting my Mama. Leave my Mama alone." The victim's daughter helped her across the street to a neighbor's home, where the neighbor bandaged her and called an ambulance. Photographs of the victim's wounds, which required numerous stitches and staples, were displayed to the jury. Hicks gave a statement to the police in which he said that he found the victim in the house with another man and that "she was going to try to get away and that is when I done my work."

Hicks took the stand and testified that he was 74 years old and had a hearing problem, trouble with his eyesight, and no education. He stated that he cannot make out faces and can read "not n'er a letter." He testified that he came home and found the victim "sitting on the sofa with another man." The man ran out, and the victim attacked Hicks with a beer bottle, striking him in the head. Hicks pulled out his pocket knife and "just went to sticking . . . [t]o keep her off of me." Then he left and went back to his sister's house.

In his brief, Hicks argues his version of the facts, contending that he was justified in defending himself from the victim's attack. But "[t]he jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. As long as there is some competent evidence, even

though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Oliver v. State*, 278 Ga. App. 425 (1) (629 SE2d 63) (2006). Viewed in the light most favorable to the verdict, the evidence was sufficient to authorize a rational trier of fact to find Hicks guilty of aggravated assault beyond a reasonable doubt under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hicks next complains that his statement to police was improperly admitted because he did not knowingly and intelligently waive his rights. The parties agreed in a colloquy before trial that a *Jackson-Denno* hearing had been held earlier and Hicks's statement ruled admissible. A copy of the trial court's order is in the file, but no transcript of that hearing appears in the record. "Without a transcript of the *Jackson-Denno* hearing, . . . we must assume the trial court's findings were supported by the evidence and the trial court's actions during the hearing were appropriate. [Cits.]" *Middlebrooks v. State*, 241 Ga. App. 193, 194 (2) (526 SE2d 406) (1999).

We note, however, that two police officers testified at trial to the circumstances of Hicks's statement. The officers testified that they informed Hicks of his rights by means of a standard form, which one of them read to Hicks in its entirety and read again for the jury. The form also recorded information regarding Hicks's age, level of education, and illiteracy; Hicks informed the officers that "he could not see very well and he had no formal education . . . whatsoever." Illiteracy, however, "does not dictate a determination that there has been no voluntary knowledgeable waiver." (Citation and punctuation omitted.) *Watson v. State*, 159 Ga. App. 618, 620 (2) (284 SE2d 636) (1981). The officers testified that Hicks understood his rights, that he did not wish to remain silent or have an attorney present, that he did not appear to be under the influence of alcohol or drugs, that he appeared to know what he was doing in giving his statement, and that the officers did not promise him anything or threaten him in any way. Because of Hicks's vision difficulties, the officers read each separate item on the form aloud to him, and then had him make his mark next to each. After having the statement read to him, Hicks made his mark on the signature line of the waiver, agreeing that he was "willing now to talk about aggravated assault on" the victim. Hicks did not offer any evidence at trial regarding his statement. The jury was instructed extensively on the applicable law, including *Miranda* rights and the necessity that any statement be freely and voluntarily made.

Factual and credibility determinations of this sort made after a *Jackson-Denno* voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous. Since the trial court's determination here

is supported by evidence (even though contradicted), it is not clearly erroneous and is therefore affirmed.

(Citation and footnote omitted.) *Hammett v. State*, 246 Ga. App. 287, 288 (1) (539 SE2d 193) (2000).
*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 6, 2006.

*Sullivan, Sturdivant & Ogletree, Samuel H. Sullivan*, for appellant.
*Scott L. Ballard, District Attorney, Gail M. Travillian, Cindy L. Spindler, Assistant District Attorneys*, for appellee.