**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**May 22, 2012**

# In the Court of Appeals of Georgia

A12A0547. GORDON v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted John Gordon of one count each of aggravated assault, motor-vehicle hijacking, and possession of a firearm during the commission of a crime. Gordon appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence and arguing that the trial court erred in its instructions to the jury on the hijacking and possession-of-a-firearm charges. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence shows that around 8:30 p.m. on February 26, 2005, James Willingham drove his SUV

---

[1] *See, e.g., Goolsby v. State*, 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

into the parking lot of a gas station and went into the station's convenience store to buy a soft drink. After making this purchase, Willingham left the store and walked back to his SUV, but just as he reached the driver's side door, a young man wearing a hooded sweatshirt approached, pointed a Glock handgun at Willingham's face, and ordered him to drop his car keys. Willingham eventually complied and ran back into the store while yelling for someone to call the police. The gunman then jumped into the driver's seat of the SUV and attempted to start the engine, but could not do so. Hearing that his SUV's engine would not start, Willingham ran back outside the store, at which point the gunman exited the SUV, fired two shots into the air to scare Willingham back into the store, and then ran through an alley toward the parking lot of a shopping center behind the gas station.

Nearly the entire incident was witnessed by an employee of a package store located in the shopping center behind the gas station. The package-store employee—who had just walked outside to go on a break—saw the gunman demand Willingham's keys and then run from the scene after failing to start the SUV's engine. Additionally, the employee saw that upon reaching the shopping center's parking lot, the gunman got into the front passenger seat of a white Ford Crown Victoria, which appeared to have been waiting for him. And although the employee did not get a good

2

look at the driver, the vehicle drove away slowly enough that he was able to see its license tag number, which he then provided to the police upon their arrival on the scene.

Based on the tag number provided by the package-store employee, the police were able to locate the white Crown Victoria shortly after it left the scene, but the driver eluded apprehension at that time. Nevertheless, police officers determined that the vehicle was registered to John Gordon's mother. Shortly thereafter, police officers went to Gordon's mother's residence and met with Gordon, who also resided there. During that interview, Gordon admitted that he was the exclusive driver of the Crown Victoria, but he denied any involvement in the gas-station hijacking and claimed that he had been with his girlfriend on the night in question. However, when the police interviewed Gordon's girlfriend, she admitted that Gordon had only been at her apartment for part of the evening on which the incident occurred.

Not long after determining who owned the Crown Victoria involved in the hijacking, police officers also learned that the actual gunman may have been 13-year-old C. T., who was the cousin of Gordon's girlfriend. Consequently, police met with C. T. and his mother, and during the course of that interview, C. T. admitted that he was the person who pointed a gun at Willingham and demanded the keys to his SUV.

Specifically, C. T. confessed that he and Gordon decided to hijack Willingham's SUV after seeing it near the gas station and noticing that it contained a custom television and DVD player. C. T. also informed the police officers that the handgun he used in the hijacking belonged to Gordon.

A day or so later, police officers obtained a warrant to arrest Gordon and to search his mother's home for any evidence connected to the hijacking. At the time the search warrant was executed, Gordon was not home, but with his mother's full cooperation, police officers discovered a Glock handgun underneath the mattress of Gordon's bed. Based on the handgun's serial number, police officers determined that it belonged to a Union City police detective, who had reported it stolen approximately seven months earlier. And shortly after executing the search warrant, police officers spotted Gordon's vehicle near his girlfriend's apartment. Gordon attempted to flee, but officers eventually arrested him following a brief high-speed chase, which ended when Gordon lost control of his vehicle and crashed into the porch of a small residence adjacent to the road.

Gordon was thereafter indicted on one count each of aggravated assault,[2] motor-vehicle hijacking,[3] theft by receiving of the stolen handgun,[4] and possession of a firearm during the commission of a crime.[5] During Gordon's trial, Willingham and the package-store employee testified about the hijacking, and several of the police officers involved testified regarding their investigation of the crime. The State also called C. T. as a witness. And although C. T. testified that Gordon was not aware that he intended to hijack the SUV when Gordon dropped him off at the gas station and that he only learned what happened as they were leaving, C. T. admitted that he previously implicated Gordon in his statement to the police. To impeach C. T.'s testimony, the State introduced C. T.'s statement implicating Gordon in the crimes, and two of the investigating officers testified that C. T. had previously claimed Gordon was involved in the commission of the foregoing crimes.

At the conclusion of Gordon's trial, the jury found him guilty on the aggravated-assault, motor-vehicle-hijacking, and possession-of-a-firearm charges but

[2] OCGA § 16-5-21 (a) (2).

[3] OCGA § 16-5-44.1 (b).

[4] OCGA § 16-8-7 (a).

[5] OCGA § 16-11-106 (b) (1).

not guilty on the theft-by-receiving charge. Thereafter, Gordon obtained new counsel and filed a motion for new trial, which the trial court denied subsequent to a hearing on the matter. This appeal follows.

1. In two separate enumerations of error, Gordon challenges the sufficiency of the evidence supporting his convictions. Specifically, Gordon argues that the evidence was insufficient to prove that C. T. actually obtained the SUV as required by the motor-vehicle-hijacking statute and that the evidence was insufficient to prove that Gordon was a party to the crime. We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[6] And in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[7] Thus, the jury's verdict will be upheld "[a]s long as there is some competent evidence, even though contradicted, to support

---

[6] *See, e.g., English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[7] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson*, 443 U.S. at 319 (III) (B).

6

each fact necessary to make out the State's case. . . ."[8] With these guiding principles in mind, we will now address Gordon's specific contentions.

(a) *Obtaining a motor vehicle.* OCGA § 16-5-44.1 (b) provides that "[a] person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon *obtains* a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so."[9] Gordon contends that the evidence was insufficient to support his conviction on the hijacking charge, arguing that the word "obtain" as it is used in the statute entails some movement of the subject vehicle and that, here, no such movement occurred because C. T. was unable to start the SUV's engine. We disagree.

While Georgia's hijacking statute does not define "obtain," this Court has previously held that "[t]he concept of 'obtaining' a motor vehicle from its owner encompasses the notion of acquiring control thereof . . . ."[10] And ordinarily,[11] "obtain"

---

[8] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

[9] OCGA § 16-5-44.1 (b) (emphasis supplied).

[10] *Bruce v. State*, 252 Ga. App. 494, 497 (1) (a) (555 SE2d 819) (2001).

[11] *See* O.C.G.A. § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification of statutes shall be applied to all words, except words of art or words

7

means "to procure or gain, as the result of purpose and effort; hence, generally, to acquire, get."[12] Therefore, applying the ordinary meaning of "obtain," the offense of hijacking a motor vehicle is concluded when *possession* of the motor vehicle is acquired.[13] Furthermore, and belying Gordon's argument, the hijacking statute makes no mention whatsoever of movement or asportation of the vehicle being an element of the offense. As such, we are not persuaded by Gordon's contention that C. T.'s failure to *move* the SUV equates to a failure to *obtain* it. The General Assembly could have included language in the hijacking statute that proscribed not only obtaining, but

---

connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter"); *Harris v. State*, 286 Ga. 245, 246 (3) (686 SE2d 777) (2009) (considering ordinary signification of key words of statute, where statute did not provide for definition and such words constituted neither a term of art nor a technical term).

[12] THE COMPACT OXFORD ENGLISH DICTIONARY 1196 (2d ed. 1991).

[13] *See Jackson v. State*, 309 Ga. App. 24, 26 (1) (a) (709 SE2d 44) (2011) (noting that "the offense of hijacking a motor vehicle is concluded when possession of the motor vehicle is attained"); *Bruce*, 252 Ga. App. at 497 (1) (a) (holding that the "concept of 'obtaining' a motor vehicle from its owner encompasses the notion of acquiring control thereof, regardless of whether the victim remains with the vehicle"). *Cf. State v. Kell*, 276 Ga. 423, 425 (577 SE2d 551) (2003) (referencing dictionary definition to ascertain meaning of "obtain" in criminal statute, and determining that the offense is concluded when the property is attained).

also moving a motor vehicle once it has been obtained. Nevertheless, "it did not, and we discern that the absence of such language was a matter of considered choice."[14]

And here, the evidence shows that C. T. pointed a handgun at Willingham, demanded the keys to his SUV, entered the vehicle, and attempted to start its engine. Accordingly, C. T. obtained the vehicle within the meaning of the hijacking statute, and thus his actions were clearly sufficient to prove hijacking of a motor vehicle beyond a reasonable doubt.[15]

(b) *Evidence that Gordon was a party to the crime.* Gordon also contends that the evidence was insufficient to support his convictions in light of the fact that C. T. testified at trial that he was unaware of C. T.'s intent to hijack the SUV and did not learn that C. T. committed any crime until well after they left the gas station. Once again, we disagree.

Under OCGA § 16–2–20, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the

---

[14] *See Jackson*, 309 Ga. App. at 28 (1) (a) (holding that the absence of language proscribing "retaining" a vehicle after obtaining it, was the legislature's considered choice that retaining the vehicle was not an element of the crime of hijacking).

[15] *See Bruce*, 252 Ga. App. at 497 (1) (a) (holding that "the offense of hijacking a motor vehicle is complete when a person while in possession of a firearm or weapon *obtains* a motor vehicle from the victim" (punctuation omitted)).

crime."[16] And a person is "concerned in the commission of a crime" if he intentionally aids or abets in the commission or intentionally "advises, encourages, hires, counsels, or procures another to commit the crime."[17] Indeed, once a common design is "shown by evidence tending to indicate that the [perpetrators] have associated themselves together to do an unlawful act, any act done in pursuance of that association by any one of the associates would . . . be the act of each of them."[18] Furthermore, criminal intent may be "inferred from conduct before, during, and after the commission of a crime."[19]

And here, C. T. informed the police that he and Gordon both agreed to the plan to hijack Willingham's SUV. Indeed, C. T.'s statement to that effect was entered into evidence, and the two investigating police officers testified that C. T. initially implicated Gordon. And although C. T. testified at trial that Gordon was not involved in his decision to hijack the SUV, "[a]ny alleged inconsistencies in the evidence and

---

[16] OCGA § 16-2-20 (a).

[17] OCGA § 16-2-20 (b) (3), (4).

[18] *Whitehead v. State*, 304 Ga. App. 213, 216 (1) (695 SE2d 729) (2010) (punctuation omitted).

[19] *McGordon v. State*, 298 Ga. App. 161, 163 (2) (679 SE2d 743) (2009) (punctuation omitted).

issues of [the witnesses'] credibility were for the jury, not this Court, to resolve; and the jury obviously resolved those issues against [Gordon]."[20]

In sum, given C. T.'s initial implication of Gordon combined with the fact that Gordon was waiting in the getaway vehicle while C. T. hijacked the SUV, fled with C. T. from the scene of the crime, possessed the gun that C. T. used in the crime, and fled again when the police attempted to arrest him, we conclude that the evidence was sufficient to support Gordon's convictions as a party to C. T.'s crimes.[21]

2. Gordon contends that the trial court erred in charging the jury on the full text of the motor-vehicle-hijacking statute. Specifically, he argues that the court erred in charging the jury on the statutory language providing that a defendant can be

---

[20] *Martin-Argaw v. State*, 311 Ga. App. 609, 613 (2) (716 SE2d 737) (2011) (footnote and punctuation omitted).

[21] *See Eckman v. State*, 274 Ga. 63, 65 (1) (548 SE2d 310) (2001) (holding that defendant could be convicted as a party to co-defendants' crimes, including motor vehicle hijacking, because there was evidence that defendant was present when the crimes were committed, and the jury could infer from her conduct before and after the crimes that she shared the criminal intent of the actual perpetrators); *Johnson v. State*, 299 Ga. App. 706, 709 (1) (a) (683 SE2d 659) (2009) (holding that jury was authorized to find that defendant was a party to hijacking because he drove perpetrator to crime scene, had prior knowledge that perpetrator intended to steal car, and helped perpetrator flee the scene).

convicted when he "conspires" to hijack, because, here, Gordon was not indicted for conspiracy. This contention lacks merit.

It is well established that in reviewing an allegedly erroneous jury instruction, "we apply the plain legal error standard of review."[22] And here, the trial court charged the jury on nearly the entirety of the motor-vehicle-hijacking statute, providing that: "[a] person commits the offense of hijacking a motor vehicle when such person, while in possession of a firearm, obtains a motor vehicle from the person or presence of another by force and violence or intimidation or conspires to do so."

On appeal, Gordon argues that the trial court erred in providing the foregoing instruction because it allowed the jury to convict him for conspiring to hijack a motor vehicle despite the fact that he was not indicted on conspiracy charges. However, a conspiracy may be proven and a jury charge may be given on conspiracy, "even though a defendant is not indicted under that theory."[23] And the specific statutory inclusion of conspiracy as a method of committing the crime of hijacking a motor vehicle does not "alter the general rule that a conspiracy can be proven and charged

---

[22] *Johnson v. State*, 299 Ga. App. at 711 (2) (punctuation omitted).

[23] *Williams v. State*, 267 Ga. 308, 309 (2) (477 SE2d 570) (1996).

12

without being indicted."[24] Accordingly, the trial court did not err in charging the jury on the entirety of the motor-vehicle-hijacking statute.[25]

3. Gordon further contends that the trial court committed reversible error in its instruction to the jury on the charge of possession of a firearm during the commission of a crime. We find this argument unavailing.

In the case *sub judice*, Count 4 of the indictment charged Gordon with possession of a firearm during the commission of a crime by noting that Gordon "did unlawfully have on and within arm's reach of [his] person a handgun during the commission of a felony against and involving the person of another, to wit: aggravated assault . . . ." And in its instructions to the jury following closing arguments, the trial court read the entire indictment, including Count 4. A few minutes later, the court instructed the jury on the applicable law as follows: "A person

---

[24] *Middlebrooks v. State*, 241 Ga. App. 193, 195 (3) (526 SE2d 406) (1999); *see also Huey v. State*, 263 Ga. 840, 842 (3) (439 SE2d 656) (1994) ("[I]t has been repeatedly held that a conspiracy may be proven and a jury charge may be given on conspiracy and parties to a crime even though a defendant is not indicted under those theories."); *Daniels v. State*, 306 Ga. App. 577, 583 (3) (703 SE2d 41) (2010) (holding that specific statutory inclusion of attempt as a method of committing offense of hijacking a motor vehicle does not alter the general rule that an attempt can be proven and charged without being indicted).

[25] *See Middlebrooks*, 241 Ga. App. at 195 (3).

13

commits the offense of possession of a firearm during commission of a crime when the person has on or within arm's reach of his person a firearm during the commission of any crime against or involving the person of another and which crime is theft by receiving." The court then stated, "The offense of aggravated assault is a felony under the laws of this State."

Gordon argues that because the court used the phrase "any crime" and then mistakenly stated that theft by receiving was the felony underlying the possession-of-a-firearm charge, the instruction was overinclusive and there is a reasonable probability that the jury convicted him of committing the offense in a manner not alleged in the indictment. But while it is clear from the record that the trial court in using the phrase "any crime" charged nearly the entire Code section and that it misspoke by stating "and which crime is theft by receiving" instead of "and which crime is a felony,"[26] an erroneous charge does not warrant a reversal "unless it was harmful and, in determining harm, the entirety of the jury instructions must be considered."[27] Furthermore, "a mere verbal inaccuracy in a charge, which results from

---

[26] *See* OCGA § 16-11-106 (b) (1).

[27] *Williams v. State*, 267 Ga. 771, 773 (2) (a) (482 SE2d 288) (1997) (punctuation omitted).

14

a palpable slip of the tongue, and clearly could not have misled or confused the jury is not reversible error."[28]

And here, the trial court instructed the jury that the State had the burden of proving every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt. Additionally, the indictment, which clearly stated that aggravated assault was the felony underlying the possession-of-a-firearm charge, was read to the jury and sent out with the jury during deliberations. Moreover, the court's mention of theft by receiving near the end of the charge was clearly a mere slip of the tongue in light of the fact that in its very next sentence the court mentioned aggravated assault as being the underlying felony at issue. Given these circumstances, "we will neither impute an adverse construction to the charge nor give so little credence to the ability of the jury to select that portion of the statute obviously applicable to the facts and issues presented for their determination."[29] Accordingly, we do not find a reasonable probability that the jury convicted Gordon of the offense

---

[28] *Id.* (punctuation omitted).

[29] *Beals v. State*, 288 Ga. App. 815, 817 (2) (655 SE2d 687) (2007) (punctuation omitted).

15

of possession of a firearm during the commission of a crime in a manner not charged in the indictment.[30]

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

---

[30] *See id.*