**FOURTH DIVISION**
**BARNES, P. J.,**
**MCMILLIAN AND MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**January 13, 2016**

# In the Court of Appeals of Georgia

A15A1990. NORMAN et al. v. YEAGER.

BARNES, Presiding Judge.

Wesley Bernard Norman, Jr. and Rite Brokers Auto Sales, LLC appeal the trial court's order dismissing their complaint that sought the return of personal property seized by the Sheriff of Coweta County. Because the seized property did not constitute contraband per se and no statutory authority supported its continued retention by the Sheriff, the trial court erred in dismissing the complaint and failing to order the Sheriff to return the property. Accordingly, we reverse.

The material facts are undisputed. Norman is one of the managing members of Rite Brokers, a limited liability company that is the title owner of a 2003 Ford truck. At the center of this case are three 100-gallon fuel tanks and a fuel pump that were attached to, or contained in, the truck owned by Rite Brokers (collectively, the "fuel equipment").

In December 2013, Norman was arrested and charged with criminal attempt to commit theft by taking based on his alleged attempt to steal diesel fuel from a business. In January 2014, Norman was charged with theft by taking for allegedly stealing diesel fuel from a second business. Norman allegedly used the Ford truck and fuel equipment in connection with the theft offenses, and the truck and equipment were seized by the Coweta County Sheriff's Office upon Norman's arrest.

In May 2014, while the criminal charges remained pending, Norman and Rite Brokers demanded the return of the truck with the fuel equipment from the Sheriff pursuant to OCGA § 17-5-50, contending that the truck was not contraband or the subject of a forfeiture action, and that photographs or video recordings of the truck would be an adequate substitute for the actual vehicle at trial. See OCGA § 17-5-50 (c).[1] When the Sheriff refused to return the truck, Norman and Rite Brokers filed a complaint in the Superior Court of Coweta County seeking the return of the seized property. The Sheriff answered the complaint, denying that he was required to return

---

[1] OCGA § 17-5-50 (c) provides: "Photographs, video tapes, or other identification or analysis of the property involved, duly identified in writing by the law enforcement officer originally taking custody of the property as accurately representing such property, shall be admissible at trial in lieu of the original property."

the truck. The Sheriff did not assert a counterclaim or file an independent forfeiture action.

In December 2014, Norman entered a plea of guilty under the First Offender Act, OCGA § 42-8-60 et seq., to one count of theft by taking. The remaining counts of the indictment were disposed of through entry of a nolle prosequi order. Norman was sentenced to five years probation to be terminated upon the payment of restitution. Norman paid the restitution in full on the date of the plea and was discharged without an adjudication of guilt pursuant to OCGA § 42-8-62 (a) of the First Offender Act.

The Sheriff returned the Ford truck to Norman and Rite Brokers after Norman pled guilty under the First Offender Act. However, before returning the truck, the Sheriff removed the fuel equipment and refused to relinquish the equipment to Norman and Rite Brokers.

The trial court subsequently conducted a hearing on Norman and Rite Brokers' complaint seeking return of the seized property. The parties stipulated to the material facts and requested for the trial court to rule on whether the Sheriff had to return the fuel equipment. The Sheriff did not rely upon a specific statute to justify retention of

the fuel equipment, but instead argued more generally that the equipment could be retained as contraband because it was a tool used in the commission of a crime.

In its final order entered after the hearing, the trial court acknowledged that "there is no clear statutory authority which addresses the present situation before the Court when a criminal defendant seeks the return of fuel tanks and a pump which were used to commit the crime of stealing fuel." But the trial court concluded that the fuel equipment was "personal property that was used by Norman in the commission of the crime of stealing diesel fuel and [was], thus, contraband" that did not have to be returned to Norman and Rite Brokers. Based on this conclusion, the trial court dismissed Norman and Rite Brokers' complaint for return of the seized property.

On appeal, Norman and Rite Brokers contend that the trial court erred by failing to require the Sheriff to return the seized fuel equipment once the criminal prosecution against Norman had been concluded. The appellants argue, and the State concedes, that there is no specific Georgia statute justifying the retention of the fuel equipment by the Sheriff after the completion of the criminal prosecution. Because the fuel equipment is not contraband per se and there is no statutory basis for continued retention of the equipment, the appellants argue that the equipment must be returned to its rightful owner, Rite Brokers. We agree with the appellants.

4

Following the conclusion of a criminal prosecution, personal property seized for use as evidence at trial must be returned to its rightful owner, unless the property constitutes contraband or is subject to forfeiture. See OCGA § 17-5-54 (a) (1), (d) (2013);[2] *Baez v. State*, 231 Ga. App. 375, 376 (500 SE2d 339) (1998). See also

[2] OCGA § 17-5-54 (2013) provides in relevant part that

(a) Except as provided in Code Sections 17-5-55 [which addresses, among other things, the disposition of evidence designated as dangerous or contraband by state or federal law] and 17-5-56 [which addresses the maintenance of evidence containing biological material] and subsections (d), (e), and (f) of this Code section, when a law enforcement agency assumes custody of any personal property which is the subject of a crime or has been abandoned or is otherwise seized, a disposition of such property shall be made in accordance with the provisions of this Code section. When a final verdict and judgment is entered finding a defendant guilty of the commission of a crime, any personal property used as evidence in the trial shall be returned to the rightful owner of the property within 30 days following the final judgment; provided, however, that if the judgment is appealed or if the defendant files a motion for a new trial and if photographs, videotapes, or other identification or analysis of the personal property will not be sufficient evidence for the appeal of the case or new trial of the case, such personal property shall be returned to the rightful owner within 30 days of the conclusion of the appeal or new trial, whichever occurs last. . . .

(d) The provisions of this Code section shall not apply to personal property which is the subject of forfeiture proceedings as otherwise provided by law.

OCGA § 17-5-54 (a) (1), (d) (2013). OCGA § 17-5-54 was revised by the General Assembly, effective July 1, 2015, but the revised statute does not apply in this case. See OCGA § 17-5-54 (Supp. 2015); Ga. L. 2015, p. 693, § 4-1/HB 233 ("This Act shall become effective on July 1, 2015, and shall apply to seizures of property for forfeiture that occur on or after that date. Any such seizure that occurs before July 1,

*Chappell v. Stapleton*, 58 Ga. App. 138 (198 SE 109) (1938); *Padgett v. Sturgis*, 6 Ga. App. 544 (65 SE 352) (1909). In determining whether the seized property constitutes contraband, Georgia courts distinguish between contraband per se, which is "inherently unlawful," and "contraband which may ordinarily be used in a beneficial and useful manner but which becomes unlawful under certain specific circumstances set forth by law." *Balkcom v. Heptinstall*, 152 Ga. App. 539, 540 (263 SE2d 275) (1979).

A party has no right to the return of objects that are contraband per se, that is, "property, the possession of which, without more, constitutes a crime." *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699 (85 SCt 1246, 14 LE2d 170) (1965). See *Windham v. Harmon*, 50 Ga. App. 322 (1) (178 SE 160) (1935) ("The courts will not sustain actions for the recovery of property the possession of which is illegal."). A quintessential example of contraband per se is cocaine, the possession of which is unlawful under the Georgia Controlled Substances Act, OCGA § 16-13-30 (a). One can "have no property rights" in objects that are contraband per se, *Blackmon v. Brotherhood Protective Order of Elks*, 232 Ga. 671, 673 (1) (208 SE2d 483) (1974), and the return of this type of contraband to the purported owner would

2015, shall be governed by the statute in effect at the time of such seizure.").

6

"frustrate[] the express public policy against the possession of such objects." *One 1958 Plymouth Sedan*, 380 U.S. at 699.

A different rule applies where the mere possession of the seized personal property is not itself illegal and the property in its ordinary use would be beneficial and useful. In that context, the seized property must be returned to its rightful owner after the conclusion of the criminal prosecution, unless a "statute . . . provides for its condemnation or confiscation." (Emphasis omitted.) *Balkcom*, 152 Ga. App. at 541, quoting *Chappell*, 58 Ga. App. at 139. See *Seaman v. State*, 196 Ga. App. 634, 635 (396 SE2d 525) (1990) (owner was entitled to return of seized videocassette recorders because the recorders were not contraband per se and no statute provided for their condemnation or confiscation).[3]

The fuel equipment at issue in the present case is not contraband per se. Fuel tanks and fuel pumps, when used in the ordinary course of affairs, are legal to possess and are beneficial and useful to society. Accordingly, Rite Brokers, as the undisputed title owner of the fuel equipment, was entitled to the return of the equipment, unless

---

[3] See also *Helton v. Hunt*, 330 F3d 242, 248 (4th Cir. 2003); *Cooper v. City of Greenwood*, 904 F2d 302, 305 (5th Cir. 1990); *United States v. Farrell*, 606 F2d 1341, 1344-1346 (D.C. Cir. 1979); *State v. Curran*, 628 P2d 1198, 1203 (Or. 1981); *Mims Amusement Co. v. South Carolina Law Enforcement Div.*, 621 SE2d 344, 349 (S.C. 2005); *State v. Driscoll*, 964 A2d 1172, 1177 (Vt. 2008).

7

a statute provided for its condemnation or confiscation. See *Seaman*, 196 Ga. App. at 635; *Balkcom*, 152 Ga. App. at 541; *Chappell*, 58 Ga. App. at 139. "Forfeiture of property is disfavored and the statutes permitting such are to be strictly construed and limited." *Seaman*, 196 Ga. App. at 635. And if there is any ambiguity as to whether property is subject to forfeiture under a statute, the "statute must be strictly construed against the State." *State v. Williams*, 278 Ga. 447, 449 (603 SE2d 278) (2004).

There is no statute authorizing the condemnation or confiscation of the fuel equipment by the Sheriff's Office under the circumstances of this case, as the Sheriff concedes on appeal. No Georgia statute specifically addresses the forfeiture of fuel equipment used in connection with a theft offense. And while Georgia more generally criminalizes possession of tools "commonly used in the commission of burglary, theft, or other crime with the intent to make use thereof in the commission of a crime," OCGA § 16-7-20 (a), the statute does not declare those tools to be contraband or subject to condemnation or confiscation. Notably, when the General Assembly has intended to declare certain objects as contraband subject to forfeiture, it has done so explicitly.[4] We must presume that the absence of similar language in OCGA § 16-7-

---

[4] See, e.g., OCGA § 3-2-33 (b), (c) (alcoholic beverages on which tax or license fee has not been paid); § 10-1-359.3 (b), (c) (property used to facilitate the theft of regulated metal property); § 12-4-48 (e) (1) (illegally produced minerals); § 12-5-137

20 was a "matter of considered choice" by the General Assembly. (Punctuation and footnote omitted.) *Gordon v. State*, 316 Ga. App. 42, 46 (1) (a) (728 SE2d 720) (2012). Accordingly, OCGA § 16-7-20 did not authorize the condemnation and confiscation of the fuel equipment by the Sheriff.

It is true that under Georgia's Racketeering Influenced and Corrupt Organizations Act (the "RICO Act"), OCGA § 16-14-1 et seq., "[a]ll property of every kind used or intended for use in the course of, derived from, or realized through a *pattern of racketeering activity* shall be subject to forfeiture to the state." (Emphasis supplied.) OCGA § 16-14-7 (a) (Supp. 2015).[5] A "pattern of racketeering activity" means engaging in at least two acts of racketeering activity, OCGA § 16-14-3 (4) (A)

---

(a) (equipment used by unlicensed well drillers); § 12-8-2 (c) (motor vehicles used to unlawfully dump sewage); § 16-6-13.2 (b), (c) (motor vehicle used in pimping); § 16-12-32 (b) (gambling devices); § 16-12-83 (obscene materials); § 16-13-49 (b) (property used in violation of the Georgia Controlled Substances Act); § 16-15-5 (b), (c) (property used to facilitate street gang activity); § 16-16-2 (b) (c) (motor vehicles, tools, and weapons used in the commission of a burglary, home invasion, or armed robbery); § 25-10-6 (illegal fireworks); § 40-6-391.2 (a) (motor vehicle used by habitual violator); § 48-11-9 (a) (1) (un-stamped cigars, cigarettes, and loose or smokeless tobacco).

[5] Although a prior version of the RICO Act was in effect at the time of the seizure of the fuel equipment, see Ga. L. 2002, p. 532, § 4; Ga. L. 2015, p. 693, § 4-1/HB 233, we cite to the current version of the Act for ease of reference because there were no substantive changes made to the Act affecting our analysis in this case.

(Supp. 2015), and "'racketeering activity' is defined to mean the commission of a crime in any of specified categories of offenses[,] . . . [which] are also known as the predicate offenses." *Ali v. State*, 328 Ga. App. 203, 207 (761 SE2d 601) (2014). See OCGA § 16-14-3 (5). Felony theft by taking under OCGA § 16-8-2 is such a predicate offense. See OCGA § 16-14-3 (5) (A) (xii). Here, however, the State did not bring a RICO forfeiture action against the fuel equipment and has not alleged, or sought to establish, that Norman engaged in a pattern of racketeering activity rather than the single felony theft to which he pled guilty under the First Offender Act. Consequently, the Sheriff could not rely upon the RICO Act as a basis for retaining the fuel equipment under the circumstances of this case.

Despite the absence of clear statutory authority, the trial court concluded that the Sheriff could retain the fuel equipment. Relying upon three opinions of this Court, the trial court reasoned that the State has the inherent authority to retain as contraband any seized personal property used as a tool in the commission of a crime. See *Baez*, 231 Ga. App. 375; *Gunter v. State*, 182 Ga. App. 548 (356 SE2d 276) (1987); *LoGiudice v. State*, 164 Ga. App. 709 (297 SE2d 499) (1982). But these three opinions do not stand for such a broad proposition.

*Gunter* and *LoGiudice* both involved the disposition of firearms used in the commission of a crime. See *Gunter*, 182 Ga. App. at 548-549; *LoGiudice*, 164 Ga. App. at 711 (4). Notably, there is a specific Georgia statute declaring weapons used in the commission of a crime to be contraband subject to forfeiture. See OCGA § 17-5-51 (2015).[6] Neither case therefore supports the trial court's conclusion that the State has the broad inherent authority to retain any property used as a tool in the commission of a crime.

In *Baez*, we held that the trial court properly found that guns and a digital scale that had been seized during a criminal investigation did not have to be returned to the defendant, where the defendant had testified in his criminal trial "that he had never seen the guns before, that they were not in his truck, and that he did not know what

---

[6] OCGA § 17-5-51 (Supp. 2015) provides:

Any device which is used as a weapon in the commission of any crime against any person or any attempt to commit any crime against any person, any weapon the possession or carrying of which constitutes a crime or delinquent act, and any weapon for which a person has been convicted of violating Code Section 16-11-126 are declared to be contraband and shall be forfeited in accordance with the procedures set forth in Chapter 16 of Title 9, notwithstanding the time frames set forth in Code Section 9-16-7.

The version of the statute in effect at the time of *Gunter* and *LoGuidice* likewise provided that weapons used in the commission of any crime against any person are contraband subject to forfeiture. See Ga. L. 1977, p. 1131, § 1.

11

the object (the scale) was." 231 Ga. App. at 376. Our ruling with respect to the guns and digital scale was narrowly based on the defendant's denial of ownership of those seized items, and thus has no bearing on the current case.

We also held in *Baez* that the case would be remanded to the trial court for a determination as to whether other personal items seized from a suitcase, including documents, checks, and cassettes, were "contraband or subject to forfeiture," or instead had to be returned to the defendant. 231 Ga. App. at 376. But we did not suggest that those items could be seized as contraband based simply on a finding by the trial court that they were tools used in the commission of a crime.

For these reasons, the trial court erred in relying upon *Baez*, *Gunter*, and *LoGiudice* to find that the Sheriff had the broad inherent authority to retain the fuel equipment as tools used in the commission of a crime. Rather, as previously discussed, the Sheriff was required to point to specific statutory authority to justify his retention of the fuel equipment, given that the equipment was not contraband per se. See *Seaman*, 196 Ga. App. at 635; *Balkcom*, 152 Ga. App. at 541; *Chappell*, 58 Ga. App. at 139.[7] Any other rule would be inconsistent with the principle emphasized

_____

[7] Some courts have recognized a narrow public policy exception to the general rule that continued retention of the seized property must be authorized by statute, where the party seeking return of the property voluntarily surrendered the property

12

by our Supreme Court that "[f]orfeitures are not favored" and "should be enforced only when within both [the] letter and spirit of the law." *Cisco v. State*, 285 Ga. 656, 663 (3) (680 SE2d 831) (2009), quoting *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226 (59 SCt 861, 83 LEd 1249) (1939). Consequently, given the absence of specific statutory authority justifying retention of the fuel equipment, the trial court erred in dismissing the appellants' complaint and in failing to order the Sheriff to return the equipment.

*Judgment reversed. McMillian and Mercier, JJ., concur.*

---

as part of his attempt to violate the law. See, e.g., *Kardoh v. United States*, 572 F3d 697, 700-702 (9th Cir. 2009); *Mantilla v. United States*, 302 F3d 182, 186-187 (3d Cir. 2002); *United States v. Smith*, 659 F2d 97, 100 (8th Cir.1981); *United States v. Farrell*, 606 F2d 1341, 1348-1350 (D.C. Cir. 1979). An example would be in the circumstance where a defendant pays money to an undercover government agent for narcotics and then later seeks to recover the money from the government. See, e.g., *Farrell*, 606 F2d at 1348-1350. In that context, some courts have reasoned that "it is contrary to public policy to permit the courts to be used by the wrongdoer . . . to obtain the property he voluntarily surrendered as part of his attempt to violate the law." Id. at 1350. We need not decide whether Georgia should adopt such a public policy exception, given that it would have no application under the facts of this case.