**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 5, 2015**

# In the Court of Appeals of Georgia

A14A1676. THE STATE v. RANDLE.

Barnes, Presiding Judge.

The trial court granted Petitioner Randle's request to be released from Georgia's sex offender registration requirements. The State filed an application for discretionary appeal, which we granted. This appeal followed in which the State contends that because Randle's underlying sexual offense involved physical contact with the genitals of the victim, it created a presumption that the victim suffered "intentional physical harm," precluding Randle's release from the registration requirements. See OCGA §§ 17-10-6.2 (c) (1) (D); 42-1-19 (a) (4). The State also argues more generally that Randle had the burden to establish a prima facie case for release from the registration requirements but failed to satisfy it. For the reasons discussed below, we conclude that the trial court did not abuse its discretion in releasing Randle from the registration requirements and therefore affirm.

The record reflects that in 1993, Randle entered a negotiated plea of guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (91 SCt 160, 27 LE2d 162) (1970) to one count of child molestation. The indictment alleged that in 1991, Randle committed an act of child molestation by placing his hands on the genitals of a minor. Randle was 21 years old at the time of his conviction. The trial court sentenced Randle to eight years, with the first three years to be served in confinement and the remaining five years on probation. As a result of his conviction and sentence, Randle was required to register as a sex offender in Georgia under the provisions of OCGA § 42-1-12.[1]

Randle served his sentence and was released from probation in 2001. In 2002, Randle applied for and obtained restoration of his civil and political rights (excluding certain firearm-related rights) from the State Board of Pardons and Paroles. In 2013, Randle filed a petition for release from the sex offender registration requirements pursuant to OCGA § 42-1-19 (a) (4).

---

[1] While there was no mandatory sexual offender registry in Georgia when Randle was convicted and sentenced, the General Assembly established such a registry in 1996. See Ga. L. 1996, p.1520, § 1. See also *Jefferson v. State*, 308 Ga. App. 549 (707 SE2d 496) (2011) (noting that Georgia's "sex offender registration statute did not become law until 1996").

The trial court conducted a hearing on Randle's petition. At the hearing, Randle tendered certified copies of his indictment and sentence for child molestation, the transcript of his plea hearing for that offense, and his criminal history from the Georgia Crime Information Center reflecting no other arrests or convictions. The parties stipulated that Randle had completed all sex offender treatment and assessments required as part of his probation; that he had not committed any probation violations; that he "did well while on probation and as well in his treatment"; and that he had no additional criminal history.

Randle, then 42 years old, testified that he has had physical custody of his 14-year-old daughter for 5 years, has been working in the technology field for 15 years and provides for himself and his daughter, and continued treatment after his probation ended because he "felt that it was very helpful." Randle testified that based on what he had learned in his treatment, he "will not put [him]self in a position where anything like this could happen again or even the perception of this [could] happen again." Randle further testified that he has never committed any other offenses and has properly registered as a sex offender every year as required. Randle explained that he wanted to be removed from the sex offender registry so that his daughter would not be bullied by others who might find his registration online. Randle also noted that

3

he would come home and find signs in his yard with his picture on it that stated such things as "sex offender lives here."

On cross-examination, Randle admitted that he had pled guilty under *Alford* to putting his hands on the genitals of a minor and that there had been physical contact between himself and the victim. Randle further admitted on cross-examination that in light of the victim's age, the victim probably did not like or want the contact.

Randle was the only person to testify at the hearing. The State did not present any evidence, but the prosecutor argued that Randle should not be released from the sex offender registration requirements because he had the burden of making out a prima facie case that the criteria for release had been met but had failed to do so. According to the prosecutor, the evidence of Randle's touching of the child victim's genitals with his hands created a presumption that the victim suffered "intentional physical harm" such that the requirement imposed by OCGA § 17-10-6.2 (c) (1) (D) for release had not been met. See OCGA § 42-1-19 (a) (4).

At the conclusion of the hearing, the trial court remarked that while the court had never before released someone from the sex offender registration requirements, the court would grant Randle's petition under the circumstances here. The trial court noted that Randle's offense occurred 21 years ago, there had been no other incidents

4

since that time, and that based on Randle's testimony at the hearing, the court was "convinced that this will never happen again." The trial court subsequently entered an order granting Randle's petition for release from the sex offender registration requirements pursuant to OCGA § 42-1-19 (a) (4). The State filed an application for discretionary appeal of the trial court's order, and this Court granted the application, resulting in this appeal.

Before turning to the specific arguments raised by the State on appeal, we first address the statutory framework applicable in this case. Under Georgia law, a defendant who is required to comply with the sex offender registration requirements imposed by OCGA § 42-1-12 must do so for his entire life. OCGA § 42-1-12 (f) (6). However, a defendant may petition to be released from the lifetime registration requirements in accordance with OCGA § 42-1-19. OCGA § 42-1-12 (g). Pursuant to OCGA § 42-1-19, a defendant may file such a petition if ten years have elapsed since he completed his term of imprisonment, parol, supervised release, and probation for the underlying sexual offense, and if the six criteria set forth in OCGA § 17-10-6.2 (c) (1) (A) through (c) (1) (F) have been met. OCGA § 42-1-19 (a) (4), (c) (2) (A). Those six criteria are:

(A) The defendant has no prior conviction of an offense prohibited by Chapter 6 of Title 16 or Part 2 of Article 3 of Chapter 12 of Title 16, nor a prior conviction for any offense under federal law or the laws of another state or territory of the United States which consists of the same or similar elements of offenses prohibited by Chapter 6 of Title 16 or Part 2 of Article 3 of Chapter 12 of Title 16;

(B) The defendant did not use a deadly weapon or any object, device, or instrument which when used offensively against a person would be likely to or actually did result in serious bodily injury during the commission of the offense;

(C) The court has not found evidence of a relevant similar transaction;

(D) The victim did not suffer any intentional physical harm during the commission of the offense;

(E) The offense did not involve the transportation of the victim; and

(F) The victim was not physically restrained during the commission of the offense.

OCGA § 17-10-6.2 (c) (1). If these criteria are met, and "if the court finds by a preponderance of the evidence that the individual does not pose a substantial risk of

perpetrating any future dangerous sexual offense," the trial court may enter an order releasing the defendant from the registration requirements. OCGA § 42-1-19 (f).

If requested by the defendant who is petitioning for release from the registration requirements, the trial court must conduct a hearing on the petition. OCGA § 42-1-19 (e). At the hearing, the trial court may consider any evidence introduced by the petitioner, prosecutor, or sheriff, as well as "[a]ny other relevant evidence." OCGA § 42-1-19 (d).

The trial court's decision whether to grant a petition for release from the registration requirements is reviewed on appeal for an abuse of discretion. See *In re Baucom*, 297 Ga. App. 661, 663 (1) (678 SE2d 118) (2009); *Miller v. State*, 291 Ga. App. 478, 479 (1) (662 SE2d 261) (2008). Under this standard, we review the trial court's legal conclusions de novo, and we uphold the trial court's findings on disputed facts and witness credibility as long as they are not clearly erroneous, i.e., as long as the factual findings are supported by any evidence. See *Miller*, 291 Ga. App. at 479. See generally *Lawrence v. Lawrence*, 286 Ga. 309, 310 (1) (687 SE2d 421) (2009) (discussing abuse of discretion standard of review). Mindful of these standards, we turn to the State's arguments.

1. The State argues that the trial court abused its discretion in releasing Randle from the sex offender registration requirements because the evidence failed to show that "[t]he victim did not suffer any intentional physical harm during the commission of the offense," a statutory prerequisite for release. See OCGA §§ 17-10-6.2 (c) (1) (D); 42-1-19 (a) (4). According to the State, the uncontroverted evidence showed that Randle touched the genitals of the child victim with his hands, which created a presumption that the victim suffered "intentional physical harm," precluding Randle's release from the registration requirements. We are unpersuaded because, as we explain below, the term "intentional physical harm" as used in OCGA § 17-10-6.2 (c) (1) (D) contemplates conduct that goes beyond offensive and unwanted touching and involves the intentional infliction of physical pain or injury upon the victim. Thus, evidence of offensive and unwanted touching, without more, does not show "intentional physical harm."

The term "intentional physical harm" is not defined by OCGA § 17-10-6.2. "In the absence of such a definition, we must look diligently for the intention of the General Assembly. OCGA § 1-3-1 (a)." *Summerlin v. Ga. Pines Community Svc. Bd.*, 286 Ga. 593, 594 (2) (690 SE2d 401) (2010). In doing so, we "presume that the General Assembly meant what it said and said what it meant," and we afford statutory

8

terms their plain and ordinary meaning. (Punctuation and footnote omitted.) *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013). See OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter."). And "[w]here the language of a statute is plain and susceptible to only one natural and reasonable construction, [we] must construe the statute accordingly." *Chase v. State*, 285 Ga. 693, 695 (2) (681 SE2d 116) (2009).

Applying these principles, we note that the word "harm" is generally and most commonly understood to mean "damage," "injury," or "hurt," as reflected by the principal definition of the word in several dictionaries. See The American Heritage Dictionary of the English Language 601 (1981) (defining "harm" as "injury or damage"); Webster's New World College Dictionary 649 (4th ed. 2001) (defining "harm" as "hurt; injury; damage"); Webster's Third New International Dictionary of the English Language Unabridged 1034 (1976) (defining "harm" as "physical or mental damage; injury"). See also *Dodds v. Dabbs, Hickman, Hill & Cannon, LLP*, 324 Ga. App. 337, 346 (3) (750 SE2d 410) (2013) (noting "that dictionaries may

9

supply the plain and ordinary meaning of a word"). Use of the phrase "intentional physical harm" in OCGA §§ 17-10-6.2 (c) (1) (D) has a narrower connotation because it necessarily excludes intentional damage, injury, or hurt that is emotional, psychological, or moral in character. See Black's Law Dictionary (9th ed. 2009) (defining "physical harm" as "any physical injury or impairment of land, chattels, or the human body"). Compare OCGA § 15-11-310 (a) (5) (referring to "serious physical, mental, emotional, or moral harm to such child"); former OCGA § 15-11-94 (b) (4) (A) (iv) (referring to "serious physical, mental, emotional, or moral harm to the child"). Consequently, by its plain and ordinary meaning, the phrase "intentional physical harm" in OCGA § 17-10-6.2 (c) (1) (D) contemplates the intentional infliction of physical damage, injury, or hurt upon the victim, and thus requires evidence of something more than an offensive and unwanted touching.

We would reach the same result even if there were ambiguity in the meaning of the statutory phrase "intentional physical harm" because the canons of statutory construction would lead to the same result. Under those canons,

> [a]ll statutes are presumed to be enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it, and are therefore to be construed in connection and in harmony with the existing law, and their meaning and effect is to be determined

10

in connection, not only with the common law and the Constitution, *but also with reference to other statutes and decisions of the courts.*

(Footnote omitted; emphasis supplied.) *Blackmon v. State*, 266 Ga. App. 877, 879 (598 SE2d 542) (2004). It follows that in determining the meaning of language found in a statute, "we look to its text as well as the interpretation that courts have given to the same language at the time the statute was enacted." *Haley v. State*, 289 Ga. 515, 523 (2) (b) (712 SE2d 838) (2011). See also *Wilson v. Pollard*, 190 Ga. 74, 80 (4) (8 SE2d 380) (1940) ("[W]here the meaning of words and phrases in a statute have been ascertained, they are to be given the same meaning when used in subsequent statutes[.]").

OCGA § 17-10-6.2, including the subsection using the phrase "intentional physical harm," was enacted by the General Assembly in 2006. See Ga. L. 2006, p. 379, § 21 / HB 1059; *Miller*, 291 Ga. App. at 480 (1) (a). The phrase "intentional physical harm" is virtually identical to the phrase "intentionally causes physical harm," which has long appeared in one of the subsections of Georgia's simple battery statute. See OCGA § 16-5-23 (a) (2) ("A person commits the offense of simple battery when he or she . . . [i]ntentionally causes physical harm to another."). And at the time the General Assembly enacted OCGA § 17-10-6.2, Georgia courts had

11

repeatedly construed the phrase "intentionally causes physical harm" in the simple battery statute as "a touching that goes beyond insult to the infliction of pain or physical injury." *Hammonds v. State*, 263 Ga. App. 5, 7 (2) (587 SE2d 161) (2003). See *Lyman v. State*, 188 Ga. App. 790, 791 (2) (374 SE2d 563) (1988); *Dinnan v. State*, 173 Ga. App. 191, 196 (2) (325 SE2d 851) (1984). Based on the canons of statutory construction, we presume that in adopting the phrase "intentional physical harm" in OCGA § 17-10-6.2 (c) (1) (D), the General Assembly was aware of the virtually identical language found in the simple battery statute and how that language had been construed by the courts, and intended for the courts to apply the same legal definition of the phrase as had been developed under our existing jurisprudence. See *Summerlin*, 286 Ga. at 594-595 (2). Consequently, we conclude that the term "intentional physical harm" as used in OCGA § 17-10-6.2 (c) (1) (D) refers to conduct by the defendant that goes beyond offensive and unwanted touching to include the intentional infliction of physical pain or injury upon the victim.

The dissent argues, however, that the phrase "intentional physical harm" in OCGA § 17-10-6.2 (c) (1) (D) should be construed to mean any physical touching of the victim by the defendant in a child molestation case. In support of this argument, the dissent emphasizes that Georgia's aggravated child molestation statute, OCGA

12

§ 16-6-4 (c), uses the phrase "physically injures the child" and argues that the General Assembly would have used that same specific phrase if it intended for OCGA § 17-10-6.2 (c) (1) (D) to mean the intentional infliction of physical pain or injury.

The dissent's argument is a red herring because both statutory phrases – "physically injures the child" in the aggravated child molestation statute and "intentionally causes physical harm" in the simple battery statute – have been construed to mean virtually the same thing, namely, the intentional infliction of physical injury or pain upon the victim. See *Dixon v. State*, 278 Ga. 4, 8 (2), n. 15 (596 SE2d 147) (2004); *Hammonds*, 263 Ga. App. at 7 (2). In enacting legislation, the General Assembly is presumed to know that the appellate courts of this State have construed two statutory phrases as equivalent. See *State v. Kachwalla*, 274 Ga. 886, 889-890 (561 SE2d 403) (2002). Thus, the fact that the General Assembly chose to use the phrase "intentional physical harm" drawn from the simple battery statute rather than the equivalent phrase "physical injury" drawn from the aggravated child molestation statute is a distinction without a difference, and has no bearing on the outcome in this case.

Additionally, we note that Georgia's sexual battery statute, OCGA § 16-6-22.1 (b), provides that "[a] person commits the offense of sexual battery when he or she

13

intentionally makes *physical contact* with the intimate parts of the body of another person without the consent of that person." (Emphasis supplied.) If, as the dissent argues, the General Assembly had intended for any physical touching of the victim in a child molestation case to exclude a defendant from potential release from the sex offender registration requirements, the legislature could have simply used the phrase "physical contact" drawn from the sexual battery statute. We must presume that the absence of such language, and the General Assembly's decision instead to use the narrower phrase "intentional physical harm" in OCGA § 17-10-6.2 (c) (1) (D), "was a matter of considered choice." (Punctuation and footnote omitted.) *Gordon v. State*, 316 Ga. App. 42, 46 (1) (a) (728 SE2d 720) (2012).

For these combined reasons, we conclude that the term "intentional physical harm" as used in OCGA § 17-10-6.2 (c) (1) (D) refers to conduct by the defendant involving the intentional infliction of physical pain or injury upon the victim. Consequently, contrary to the State's argument, evidence that the underlying sexual offense involved offensive and unwanted touching of the victim does not, standing alone, create a presumption of "intentional physical harm" that precludes a defendant from satisfying the criteria for release imposed by OCGA § 17-10-6.2 (c) (1) (D).

14

2. The State also argues more generally that Randle had the burden to establish a prima facie case for release from the sex offender registration requirements, including a showing under OCGA § 17-10-6.2 (c) (1) (D) that the "[t]he victim did not suffer any intentional physical harm during the commission of the offense," and that the trial court abused its discretion in finding that Randle satisfied that burden.[2] We disagree.

It is true that the burden is on the defendant petitioning for release from the sex offender registration requirements to make out a prima facie case of entitlement to release sufficient to shift the burden to the State to show the contrary. See *In re Baucom*, 297 Ga. App. at 663 (1); *Miller*, 291 Ga. App. at 481 (1) (b). But "[w]hat amount of evidence will change the onus or burden of proof shall be a question to be decided in each case by the sound discretion of the trial court." (Citation and

_____

[2] The State further argues that the trial court did not consider all of the statutory criteria for release imposed by OCGA § 17-10-6.2 (c) (1) in concluding that Randle should be released from the sex offender registration requirements pursuant to OCGA § 42-1-19 (a) (4). While the trial court's order states without elaboration that Randle was eligible for release under OCGA § 42-1-19 (a) (4), the court was not required to include written findings of fact and conclusions of law in its order. See *In re Baucom*, 297 Ga. App. at 663-664 (1). And absent any showing to the contrary, we presume that the trial court followed the law when it granted Randle's petition. See *Lee v. State*, 324 Ga. App. 28, 31 (1) (749 SE2d 32) (2013); *Rivers v. State*, 270 Ga. App. 633, 636 (1), n.5 (607 SE2d 144) (2004).

punctuation omitted.) *In re Baucom*, 297 Ga. App. at 663 (1). Moreover, the statutory criteria for release found in OCGA § 17-10-6.2 (c) (1) are stated in the negative, and because "[i]t is often impossible to prove a negative, . . . the degree of proof required to support a negative proposition and to shift the burden must vary, according to the circumstances of the case." *Hyer v. C.E. Holmes & Co.*, 12 Ga. App. 837, 847 (79 SE 58) (1913). And if the defendant petitioning for release presents evidence of circumstances from which it could reasonably be inferred "that the negative is in truth the fact," the burden shifts to the State to show "that the negative does not exist." *Woods v. State*, 233 Ga. 347, 348 (1) (a) (211 SE2d 300) (1974) (discussing burden-shifting where case involves "proof of a negative").

Here, after considering the parties' stipulations, the certified records tendered into court, and Randle's testimony, the trial court found that Randle had satisfied his prima facie burden of entitlement to release from the sex offender registration requirements. In light of the evidence as previously summarized in this opinion, we cannot say that the trial court abused its discretion. With respect to OCGA § 17-10-6.2 (c) (1) (D), there was evidence that the underlying child molestation offense consisted of Randle touching the genitals of the child victim with his hands, and the trial court was authorized to infer from this circumstance that there was no intentional

16

infliction of physical pain or injury upon the victim, and thus that the sexual offense did not rise to the level of "intentional physical harm" so as to preclude release from the registration requirements. See supra Division 1; *Clark v. State*, 328 Ga. App. 268, 271 (3) (761 SE2d 826) (2014) (physical precedent only) (offense that was committed by touching victim "did not involve . . . any of the . . . factors listed in OCGA § 17-10-6.2 (c) (1)"). Accordingly, the trial court's order granting Randle's petition for release is affirmed.

*Judgment affirmed. Miller and Boggs, JJ., concur. Doyle, P.J., concurs in judgment only. Ellington, P.J., Dillard and Branch, JJ., dissent.*

A14A1676. THE STATE v. RANDLE.

BRANCH, Judge, dissenting.

Randle entered a guilty plea to a charge of child molestation in 1993. Randle now petitions to be released from sex offender registry requirements pursuant to OCGA § 42-1-19 (a) (4), which a judge may grant if certain conditions are met, including that "[t]he victim did not suffer any intentional physical harm during the commission of the offense," OCGA § 17-10-6.2 (c) (1) (D), and that "the court finds by a preponderance of the evidence that the individual does not pose a substantial risk of perpetrating any future dangerous offense." OCGA § 42-1-19 (f). The trial court granted Randle's petition and the State appealed, arguing that Randle, who touched the genitals of a ten-year-old boy, cannot show that his victim did not suffer "intentional physical harm." The majority would affirm, holding that "evidence of offensive and unwanted touching, without more, does not show 'intentional physical harm.'" I respectfully dissent because Randle's touching of the genitals of his child

victim amounted to "intentional physical harm" such that he is not eligible to be released from sex offender registry requirements.[1]

"For purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent." *Vines v. State*, 269 Ga. 438, 440 (499 SE2d 630) (1998). The majority's reliance on law relating to the crimes of battery and sexual battery to define "intentional physical harm" is thus misplaced; instead, we should consult the child molestation statutes to address the unique harms caused by sexual crimes against a child.

A person commits child molestation if that person "[d]oes any immoral or indecent act *to or in the presence of or with* any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1) (emphasis supplied). The crime of child molestation thus

---

[1] I am also deeply skeptical of the trial court's certitude that Randle "will never" molest a child again. That Randle has not been accused of child molestation since his release in 2001 does not show that he will never re-offend. When the General Assembly adopted OCGA § 17-10-6.2 in 2006 for the punishment of sexual offenders (and included the same criteria for sentencing consideration as set forth in OCGA § 42-1-19 (a) (4)), it noted that "sexual offenders who prey on children are sexual predators who present an extreme threat to the public safety. Many sexual offenders are extremely likely . . . to repeat their offenses; and some sexual offenders commit many offenses, have many more victims than are ever reported, and are prosecuted for only a fraction of their crimes." Ga. L. 2006, p. 379, § 1. Further, Randle's victim was a young boy; that Randle has not attacked his daughter is hardly conclusive proof that he has not or will not re-offend.

2

includes sexually motivated acts that involve both touching and not touching a child. The crime of aggravated child molestation, however, occurs when a person "commits an offense of child molestation which act *physically injures* the child or involves an act of sodomy." OCGA § 16-6-4 (c) (emphasis supplied). If the General Assembly had intended that child molestation cases involving the mere touching of a child be excluded from the category of crimes involving "intentional physical harm," OCGA § 17-10-6.2 (c) (1) (D), it certainly could have referred to a distinction between such touching and physical injury, just as it did in the aggravated child molestation statute, OCGA § 16-6-4 (c). But it did not, a decision which we must assume was "a matter of considered choice." *Gordon v. State*, 316 Ga. App. 42, 46 (1) (a) (728 SE2d 720) (2012) (footnote omitted). Likewise, the legislature's decision not to use the phrase "physical contact," as in the sexual battery statute that does not necessarily involve a child victim, see OCGA § 16-6-22.1 (b), does not compel the conclusion that in the specific context of authorizing a deviation from a mandatory minimum sentence *for a child molester*, the term "intentional physical harm" excludes an intentional touching of the victim. The distinctive element of the crime of child molestation, as opposed to the lesser included offense of sexual battery, is that the act or touching occur for the purpose of arousing the sexual desires of either the aggressor or the

3

child victim. See OCGA §§ 16-6-4 (a) (1), 16-6-22.1 (b), (d). Randle was convicted of this crime, not sexual battery, and neither we nor the trial court may ignore his established history of touching a child with the intent of gratifying his own sexual desires.

The majority's citations to the law of battery and sexual battery are thus inapposite, and its conclusion that the term "intentional physical harm" necessarily encompasses physical pain or injury to a child victim is error. OCGA §§ 17-10-6.2 and 42-1-19 (a) (4) authorize a trial court to deviate from a mandatory minimum sentence imposed on a child molester only when that molestation does not involve touching a child. As this case does involve such physical touching, Randle is not eligible for release from sex offender registry requirements. I therefore dissent.

I am authorized to state that Ellington, P. J., and Dillard, J., join in this dissent.

4