In the Supreme Court of Georgia

Decided: January 19, 2016

S15G0946. THE STATE v. RANDLE.

HUNSTEIN, Justice.

Appellee Blake Randle is a registered sex offender who seeks release from the sex offender registration requirements prescribed at OCGA § 42-1-12. In this case, we granted the State's petition for certiorari to consider one of the criteria for eligibility for removal from the sex offender registry, namely, the requirement that the offense that resulted in the offender's inclusion on the registry involved no "intentional physical harm" to the victim. See OCGA §§ 42-1-19 (a) (4), 17-10-6.2 (c) (1) (D). The issue before us is whether the phrase "intentional physical harm" in this context includes physical contact that, while offensive and unwelcome, resulted in no physical pain or injury. We conclude that it does not, and we therefore affirm the Court of Appeals in its affirmance of the superior court's order granting Randle's petition for removal from the sex offender registry. See State v. Randle, 331 Ga. App. 1 (769 SE2d 724) (2015).

In 1993, Randle pled guilty under <u>North Carolina v. Alford</u>[1] to one count of child molestation stemming from an incident in which he touched the penis of a ten-year-old boy. The trial court imposed an eight-year sentence, three to be served in prison and the balance on probation. Randall completed his prison sentence, registered as a sex offender in accordance with OCGA § 42-1-12, and served out the remainder of his term on probation, from which he was released in June 2001.

In 2013, Randle filed a petition for release from the sex offender registry pursuant to OCGA § 42-1-19 (a) (4), which authorizes release where at least ten years have elapsed since the offender has completed his sentence, see id. at (c) (2) (A), and he can establish the fulfillment of six criteria set forth at OCGA § 17-10-6.2 (c) (1).[2] Among these criteria is the requirement that "the victim did not suffer any intentional physical harm during the commission of the offense." OCGA § 17-10-6.2 (c) (1) (D).[3] Following a hearing, the trial court granted

---

[1]400 U. S. 25 (91 SCt 160, 27 LE2d 162) (1970).

[2]As discussed below, OCGA § 17-10-6.2 (c) (1) is a subsection of the sex offender sentencing statute.

[3]The other five criteria are: (1) the offender has no prior convictions for sexual offenses or obscenity in relation to minors; (2) the offense at issue did not involve the

Randle's petition, finding that Randle had met all the requirements for release from the registry.

The State appealed, arguing that Randle's act of touching the victim's genitals gave rise to a presumption that the victim had suffered "intentional physical harm" that would preclude Randle's removal from the sex offender registry. In a split decision, the Court of Appeals affirmed, with the majority concluding that the phrase "intentional physical harm" refers to "conduct that goes beyond offensive and unwanted touching and involves the intentional infliction of physical pain or injury upon the victim." Randle, 331 Ga. App. at 5. The dissent, on the other hand, opined that intentional physical contact of any type constitutes "intentional physical harm" that would preclude an offender's removal from the registry. Id. at 9-11 (Branch, J., dissenting.) We granted certiorari, thus, to resolve the issue of whether "intentional physical harm" in this context encompasses all intentional physical contact or only that which is shown to have caused some physical pain or injury. Our review of this purely

use of a deadly weapon; (3) the court finds no evidence of a similar transaction; (4) the offense did not involve the transportation of the victim; and (5) the victim was not physically restrained during the commission of the offense. Id. at (c) (1) (A) - (C), (E), (F).

3

legal issue is de novo.  See <u>Luangkhot v. State</u>, 292 Ga. 423 (736 SE2d 397) (2013).

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant . . . and so we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.  The common and customary usages of the words are important, but so is their context.  For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law . . . that forms the legal background of the statutory provision in question.

(Citations and punctuation omitted.)  <u>Zaldivar v. Prickett</u>, 297 Ga. 589, 591 (1) (2015).

At the crux of this dispute is the meaning of the word "harm."  As the Court of Appeals majority noted, the common understanding of "harm," as reflected in leading English language dictionaries, involves "damage," "injury," or "hurt."  See <u>Randle</u>, 331 Ga. App. at 5 (citing three well-known print dictionaries); accord Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/harm (website last accessed Jan. 14, 2016).  In comparison, the word "contact" is defined to mean "a state of touching" or "a union or junction of surfaces."  See Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/contact (website last accessed Jan.

4

14, 2016]); accord Cambridge Dictionaries Online, http://dictionary.cambridge.org/us/dictionary/english/contact (website last accessed Jan. 14, 2016) ("contact" defined as "the fact of two people or things touching each other"). In common parlance, thus, the word "harm" indicates not any contact but, rather, injurious contact. Also notable is the juxtaposition of the word "suffer" immediately preceding the phrase "intentional physical harm," which further supports the connotation of physical pain or injury.

Looking beyond the words of the phrase in question, we note that among the other five criteria specified in OCGA § 17-10-6.2 (c) (1) is the requirement that "[t]he victim was not physically restrained during the commission of the offense." Id. at (c) (1) (F). If subsection (c) (1) (D) were construed broadly as meaning physical contact of any form, subsection (c) (1) (F) would be rendered largely superfluous, as physical restraint will almost always entail physical contact. The canon of statutory construction requiring that courts "'avoid a construction that makes some language mere surplusage,'" Beneke v. Parker, 285 Ga. 733, 734 (684 SE2d 243) (2009), thus militates in favor of the narrower construction of "intentional physical harm."

The notion of "intentional physical harm" as involving actual physical injury also finds support in the context of the larger legislative scheme of which OCGA § 17-10-6.2 (c) is a part. OCGA § 17-10-6.2, which prescribes mandatory minimum sentences for sexual offenses, was enacted as part of the 2006 comprehensive overhaul of the Code's provisions related to sexual offenders. See Ga. L. 2006, p. 379, Act 571, § 21. Among the other facets of this legislative package was a new sexual battery statute, which defines sexual battery as the act of "intentionally mak[ing] physical contact" with another person's intimate body parts without his or her consent. Id. at 391, § 15 (enacting OCGA § 16-6-22.1). Clearly, then, at the time of this enactment the General Assembly was capable of crafting language precisely targeting intentional physical contact, and yet it chose not to in fashioning the language of OCGA § 17-10-6.2 (c) (1) (D). The difference in phraseology utilized in these contemporaneously enacted provisions reinforces the conclusion that the legislature did not view "intentional physical harm" as coterminous with intentional physical contact.[4]

[4]The criteria under OCGA § 17-10-6.2 (c) (1), which govern deviations from mandatory minimum sentences, did not become relevant to release from the sex offender registry until 2010, when the legislature further revised the statutory scheme

6

This construction of "intentional physical harm" also accords with authority from elsewhere in the realm of our criminal law. In defining the offense of simple battery, the legislature has long recognized a distinction between "intentionally mak[ing] physical contact of an insulting or provoking nature" and "intentionally caus[ing] physical harm." See OCGA § 16-5-23 (a). Though both acts constitute the offense of simple battery, the fact that they are identified separately indicates the legislature's view that they are not interchangeable. In construing the simple battery statute, our State's appellate courts have also recognized this distinction. See Moore v. State, 283 Ga. 151, 154 (2) (656 SE2d 796) (2008) (distinguishing intentional "insulting or provoking physical contact" from intentional "physical harm"); Hammonds v. State, 263 Ga. App. 5, 7 (2) (587 SE2d 161) (2003) (distinguishing "a touching that does not result in injury, but is nonetheless insulting or provoking" from "a touching that goes beyond insult to the infliction of pain or physical injury").

related to sex offenders. The 2010 legislation, inter alia, established the current process for petitioning for release from the registry and, in so doing, expressly adopted the criteria set forth at OCGA § 17-10-6.2 (c) (1). See Ga. L. 2010, p. 168, Act 389, § 15 (enacting OCGA § 42-1-19). In adopting these criteria in toto and without qualification, the legislature, we presume, intended that their meanings as applied in the context of the 2006 legislation be equally applicable to the 2010 legislation.

Thus, both the legislature and our courts have recognized generally, albeit in a different context, that physical contact, even if uninvited or unwanted, does not necessarily equate to physical harm. We find no reason to believe that the legislature intended to disregard this distinction in the present context.

For the foregoing reasons, we hold that the phrase "intentional physical harm," as it is used in OCGA § 17-10-6.2 (c) (1) (D), means intentional physical contact that causes actual physical damage, injury, or hurt to the victim. We therefore affirm the judgment of the Court of Appeals.

Judgment affirmed. All the Justices concur.