[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12013

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

B'QUAN FERGUSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:21-cr-00157-WTM-CLR-1

_____

Before JORDAN, LAGOA, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

B'Quan Ferguson appeals his 180-month sentence following his conviction for one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).  On appeal, Ferguson contends that the district court erred in finding that his prior Georgia conviction under O.C.G.A. § 16-10-32(b) for threatening physical harm to a witness qualifies as a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  After careful consideration of the parties' arguments and with the benefit of oral argument, we conclude that Ferguson's prior conviction qualifies as a violent felony and we affirm the district court's judgment.

## I.    BACKGROUND

On October 31, 2020, B'Quan Ferguson was driving in Savannah, Georgia, when local police officers recognized him as the subject of an ongoing investigation.  The officers observed Ferguson park at a tire shop and walk to a nearby convenience store.  When Ferguson returned, the officers were waiting by his vehicle, and they inquired whether Ferguson owned the car.  Ferguson answered that it was his brother's car, but a record check revealed that Ferguson had a suspended license and that the vehicle had no insurance and an expired registration.  At that point, the officers observed a pistol grip sticking out from underneath the front passenger's seat.  Ferguson was cited for driving with a suspended license and without insurance, and the vehicle was towed.

Officers obtained a search warrant for the vehicle and found a pistol under the front passenger seat.  A search warrant for

Ferguson's DNA, coupled with a DNA test on the firearm, confirmed that Ferguson's DNA was present on the pistol. Officers obtained an arrest warrant for Ferguson for the possession of a firearm by a convicted felon, which they executed on December 27, 2020.

A grand jury charged Ferguson with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Ferguson pled guilty to the charge under a written plea agreement.

The probation officer's presentence investigation report (PSI) concluded that Ferguson qualified as an armed career criminal under ACCA based on prior convictions for possession with intent to distribute, conspiracy to possess with intent to distribute, and threatening a witness. Based on an offense level of twenty-four and a criminal history category of VI, Ferguson's initial guideline range was 168 to 210 months' imprisonment. But because Ferguson qualified as an armed career criminal, ACCA mandated a fifteen-year minimum sentence. The guideline range was thus 180 to 210 months.

According to the PSI, the facts underlying Ferguson's conviction for threatening a witness involved an individual named Sylvester Harris. After threatening Harris with a gun, Ferguson was indicted and charged under O.C.G.A. § 16-10-32(b) with having "threatened physical harm" toward Sylvester Harris with "the intent to hinder, delay, prevent, and dissuade" Harris from testifying in an official proceeding. Ferguson pled guilty to the offense and was sentenced to five years' imprisonment in that case.

4                    Opinion of the Court                    22-12013

At sentencing in this case, Ferguson objected to the PSI's conclusion that he was an armed career criminal.  Ferguson argued that his Georgia conviction for threatening a witness did not qualify as a violent felony for the purposes of ACCA enhancement.[1] The government answered that, because ACCA's definition of "violent felony" simply requires a felony plus the threat of "something more than non-consent," a felony conviction for threatening "physical harm" constitutes a "violent felony" under ACCA.  The district court overruled Ferguson's objection, applied the ACCA enhancement, and sentenced Ferguson to 180 months' imprisonment.

This timely appeal ensued.

## II.    STANDARD OF REVIEW

We review de novo whether a defendant's prior conviction qualifies as a crime of violence for purposes of ACCA.  *United States v. Matthews*, 3 F.4th 1286, 1291 (11th Cir. 2021).

## III.    ANALYSIS

Ferguson challenges the district court's determination that a conviction for threatening a witness under Georgia law qualifies as a violent felony under ACCA.  He contends that the Georgia statute under which he was convicted is indivisible and cannot serve as an ACCA predicate because it criminalizes both threats of

---

[1] Ferguson also argued that his conspiracy conviction did not count as a "serious drug offense" for the purposes of the ACCA enhancement.  He does not raise that argument on appeal.

economic and physical harm. He also argues that, even if the statute is divisible, a threat of physical harm under the statute does not constitute a violent felony for ACCA purposes. Specifically, Ferguson reasons that the Georgia statute can be violated by misdemeanor conduct that constitutes no more than an offensive touching. For the following reasons, we disagree.

### A. Categorical and Modified Categorical Approaches

ACCA provides that a defendant who is convicted of possessing a firearm as a felon must receive a fifteen-year mandatory-minimum sentence if he has three or more prior convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). ACCA defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 924(e)(2)(B). The first clause, § 924(e)(2)(B)(i), is commonly referred to as ACCA's "elements" clause. *United States v. Oliver*, 962 F.3d 1311, 1316 (11th Cir. 2020).

"Under this provision, 'use' requires active employment of physical force." *Id.* (citing *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)). The Supreme Court has clarified that "the phrase 'physical force'

means violent force—that is, force capable of causing physical pain or injury to another person." *Id.* (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)).

O.C.G.A. § 16-10-32(b), the statute at issue in this appeal, makes it a felony to threaten a witness in order to prevent that witness from testifying. Specifically, the statute provides:

> Any person who threatens or causes physical or economic harm to another person or a member of such person's family or household, threatens to damage or damages the property of another person or a member of such person's family or household, or attempts to cause physical or economic harm to another person or a member of such person's family or household with the intent to hinder, delay, prevent of dissuade any person from:
>
> (1) attending or testifying in an official proceeding;
>
> . . .
>
> shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than two years nor more than ten years or by fine of not less than $10,000.00 nor more than $25,000.00 or both.

*Id.* Because O.C.G.A § 16-10-32(b) does not criminalize burglary, arson, extortion, or any of the other crimes enumerated in § 924(e)(2)(B)(ii), we must decide whether a conviction under O.C.G.A § 16-10-32(b) qualifies as a violent felony under ACCA's elements clause. *See Oliver*, 962 F.3d at 1316.

To determine whether a state conviction qualifies as a "violent felony" under ACCA, we employ a "categorical approach." *Id.*; *accord Taylor v. United States*, 495 U.S. 575, 600 (1990). The categorical approach asks whether "the 'least of the acts criminalized' by the statute of conviction has an element requiring 'the use, attempted use, or threatened use of physical force against the person of another." *United States v. Sharp*, 21 F.4th 1282, 1285 (11th Cir. 2021) (quoting *Oliver*, 962 F.3d at 1316). If so, then the conviction categorically qualifies as a violent felony; if not, then the conviction categorically does not qualify as a violent felony. *Id.*

Because the categorical approach asks only whether the statute of conviction categorically fits within ACCA's definition of "violent felony," a court should look only to the "elements of the statute of conviction" rather than the "specific conduct of a particular offender." *United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017) (alteration adopted) (quoting *Mathis v. United States*, 579 U.S. 500, 510 (2016)); *see Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) ("[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense '"necessarily" involved . . . facts equating to [the] generic [federal offense].'" (alterations in original) (quoting *Shepard v. United States*, 544 U.S. 13, 24 (2005) (plurality opinion))).

But sometimes, a statute "lists multiple, alternative elements, and so effectively creates 'several different crimes,'" only one of which categorically qualifies as a violent felony. *Descamps v. United States*, 570 U.S. 254, 263–64 (2013) (alterations adopted)

(quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)).  Such statutes are called "divisible" statutes.  *Id.* at 257.  In such cases, courts apply the "modified categorical approach."  *Id.* at 263–64.  The modified categorical approach is simply the categorical approach applied to one of a divisible statute's listed crimes.  *Id.* at 263 ("[T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute.").  For example, under the reasoning of *Descamps*, a single state statute might prohibit both threatening murder and threatening property damage.  If the statute is divisible between the two threats, and the threat of murder constitutes a violent felony, then a jury conviction for threatening murder categorically constitutes a conviction for a violent felony.  *Cf. id.* at 261–62 (explaining that where a state burglary statute criminalizes entry of an automobile and entry of a building, the modified categorical approach would apply to the latter element but not the former, assuming that the statute were divisible).  To decide which "version" of a divisible statute formed the basis of a defendant's conviction, a court may look at certain judicial documents, including the indictment, plea agreement, plea colloquy, or other comparable records.[2]  *See Shepard*, 544 U.S. at 26.

---

[2] These documents are known as *Shepard* documents and are records related to a defendant's prior convictions, including charging documents, plea agreements, plea-colloquy transcripts, and other comparable judicial records.  *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Because the modified categorical approach applies only to divisible statutes, courts must distinguish divisible statutes, which list alternative elements, from indivisible statutes, which list various means of committing an offense. *Mathis*, 579 U.S. at 517. If an indivisible statute specifies means of committing an offense that include both violent and nonviolent conduct, then that statute does not qualify categorically as a "violent felony" under ACCA. *Oliver*, 962 F.3d at 1316–17. By contrast, if a divisible statute criminalizes violent and nonviolent conduct as two separate elements, then a defendant may commit a violent felony by violating the statute's violent conduct element, regardless of the fact that the statute also criminalizes nonviolent conduct. *Sharp*, 21 F.4th at 1285–86.

O.C.G.A § 16-10-32(b) contains three clauses that each criminalize a type of activity: (1) to threaten or cause harm to a person; (2) to threaten or cause damage to property; and (3) to attempt to cause physical or economic harm to a person. As noted, the first clause, at issue here, criminalizes two types of threatened or caused harm: "economic" and "physical." The government admits that threatening economic harm does not constitute a "violent felony." And it is clear that threatening property damage does not involve the use of "physical force directed against the person of another." Thus, to determine whether Ferguson's conviction constitutes a "violent felony," we must first decide whether O.C.G.A. § 16-10-32(b) is divisible. If the statute's first clause is indivisible, and physical and economic harm are simply alternative means of committing the same offense, then the statute does not categorically constitute a "violent felony" under ACCA. If, instead, the statute is

divisible, not only by the three types of prohibited action (harm to a person, damage to property, or attempted harm to a person) but also by the type of harm (economic or physical), then we must next determine whether threatening "physical harm" has an element requiring "the use, attempted use, or threatened use of physical force against the person of another."

To be divisible, a statute must set out "one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile." *Descamps*, 570 U.S. at 257 (emphasis in original). "Thus, for a statute to be divisible, the statutory phrases listed in the alternative must be elements, not means." *Oliver*, 962 F.3d at 1317 (citing *Mathis*, 579 U.S. at 517). "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove [and the jury must find beyond a reasonable doubt] to sustain a conviction.'" *Mathis*, 579 U.S. at 504 (quoting *Black's Law Dictionary* 634 (10th ed. 2014)). "Means," by contrast, are merely "various factual ways of committing some component of the offense." *Id*. at 506.

As explained by the Supreme Court in *Mathis*, there are three methods for determining whether an alternatively phrased statute sets forth elements or means. First, the "statute on its face may resolve the issue." *Id*. at 518. The statute may do so plainly, by its very structure and layout. For example, in *Davis*, we held that a statute criminalizing sexual abuse was divisible because it consisted of two clauses set off by numbers, one of which criminalized sexual abuse by forcible compulsion, and the other of which

criminalized sexual abuse of a person incapable of consent. 875 F.3d at 598. Courts have also found that the disjunctive "or" indicates that alternatives are different elements. *See, e.g.*, *Descamps*, 570 U.S. at 257 (explaining that an example of a divisible statute is one "stating that burglary involves entry into a building *or* an automobile"); *United States v. Bates*, 960 F.3d 1278, 1293 (11th Cir. 2020) (explaining that a statute which listed two alternatives in the disjunctive intended the alternatives to be elements); *United States v. Gundy*, 842 F.3d 1156, 1167 (11th Cir. 2016) (finding that a statute contained three subsets of different locational elements because the statute's "plain text" stated the elements "in the alternative and in the disjunctive"). Further, since *Apprendi v. New Jersey*, 530 U.S. 466 (2000), statutes may also indicate that alternatives are elements by assigning them different punishments. *Mathis*, 579 U.S. at 518.

As part of this textual analysis, courts also look to whether the statute's list of alternatives is exhaustive or non-exhaustive. If a statutory list is drafted to only offer "illustrative examples," then it is not setting forth a series of elements, but rather a variety of possible means. *Id.* (quoting *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014)). We have interpreted the phrase "illustrative examples" to describe a "non-exhaustive" list of means. *Oliver*, 962 F.3d at 1317 (quoting *Howard*, 742 F.3d at 1348). For instance, in *Howard*, we found that an Alabama statute was not divisible where it defined "building" as "[a]ny structure which may be entered by persons . . . and such term includes any vehicle, aircraft or warcraft . . . and such term includes any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof."

742 F.3d at 1348 (quoting Ala. Code § 13A-7-1(2)).  We explained that the word "include" made the list non-exhaustive, indicating that the various types of structures mentioned were examples rather than alternative elements.  *Id.*  By comparison, statutes setting forth exhaustive lists are more likely to be listing elements than means.  In *Oliver*, for example, we held that a statute listing three types of terroristic threats (threatening a crime of violence, releasing hazardous substances, and damaging property) was divisible because the list was "exhaustive" and lacked "illustrative examples."  962 F.3d at 1319.

The second method of determining a statute's divisibility is to look for a definitive answer from a precedential state court decision.  *Mathis*, 579 U.S. at 517–18.  In *Mathis*, the Supreme Court explained that a state court decision "definitively answer[ed] the question" where it held that alternatively listed items were "'alternative methods' of committing one offense, so that a jury need not agree" on a specific statutory alternative.  *Id.* (alteration adopted) (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)). "When a ruling of that kind exists, a sentencing judge need only follow what it says."  *Id.*

Third, federal courts can also look for guidance in the record of a prior conviction itself.  *Id.* at 519.  Indeed, *Mathis* explains that federal judges may look to the record of the prior conviction "if state law fails to provide clear answers."  *Id.* at 518.  When parsing a divisible statute, we apply the modified categorical approach to determine whether the defendant committed a crime of violence.

*Alvarado-Linares*, 44 F.4th at 1342. Under the modified categorical approach, we look beyond the elements enumerated in the statute to *Shepard* documents—the indictment, jury instructions, plea agreement, and plea colloquy—to determine which specific crime, comprising which elements, the defendant committed. *Id*. If the indictment or jury instructions in a particular case reiterate all the alternative terms from the statute or use a "single umbrella term" like "premises," then the record is "as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Mathis*, 579 U.S at 519. Conversely, "by referencing one alternative term to the exclusion of all others" an indictment could indicate that the statute "contains a list of elements, each one of which goes toward a separate crime." *Id*.

### B. Divisibility of Georgia's Threatening-a-Witness Statute

With this framework in mind, we now turn to the Georgia statute before us. Neither we nor the Georgia Supreme Court have definitively held that O.C.G.A § 16-10-32(b) is divisible. Recall that O.C.G.A. § 16-10-32(b) criminalizes three types of activity intended to dissuade a witness from testifying in a public proceeding: (1) threatening or causing harm to a person, (2) threatening or causing damage to property, and (3) attempting to cause harm to a person. The first clause, at issue here, also criminalizes two types of threatened or caused harm: economic harm and physical harm. *Id*. The parties contest only the divisibility of the first clause. But whether the statute is divisible between economic and physical harm is immaterial if the statute is not also divisible between the three types

of intimidating activity, the second of which would not constitute a violent felony under ACCA.  We must begin, then, with the divisibility of the three clauses.

Ferguson conceded at oral argument that O.C.G.A § 16-10-32(b) is divisible between the three types of activity, and we agree. To begin with, the statute's framework is similar to the statute we held divisible in *Oliver* and is divisible for the same reasons.  *See Oliver*, 962 F.3d at 1319.  On the face of the statute, the three clauses set forth an exhaustive list of intimidating activities that qualify as violations under the statute.  O.C.G.A § 16-10-32(b).  Likewise, "the lack of illustrative examples indicates that the Georgia statute contains divisible threat elements."  *Oliver*, 962 F.3d at 1319 (citing *Mathis*, 579 U.S. at 518).

Moving to the second step of the *Mathis* framework, no Georgia state court decision "definitively answers" whether O.C.G.A. § 16-10-32(b), as a whole, lists elements or means.  *See Mathis*, 579 U.S. at 518.  Though a handful of Georgia courts have implied that the statute is divisible by describing "economic harm" as an "element" of the offense, none have explicitly ruled on the statute's divisibility.  *See Shelnutt v. State*, 657 S.E.2d 611, 616 (Ga. Ct. App. 2008); *Palmer v. State*, 682 S.E.2d 323, 324 (Ga. Ct. App. 2009).  *Mathis*'s second step thus does not offer much guidance, as the Georgia state courts have not weighed in upon any aspect of § 16-10-32(b)'s divisibility.

As such, we turn to *Mathis*'s third step—Ferguson's record of conviction.  Ferguson's indictment charged Ferguson with

violating the first clause by threatening "physical harm to Sylvester Harris with the intent to hinder, delay, prevent, and dissuade him from attending and testifying in an official proceeding." The indictment makes no mention of property damage or attempted physical or economic harm. Exclusion of these other types of activity is further proof that the statute contains a list of divisible elements. *See Oliver*, 962 F.3d at 1320. Accordingly, we conclude that the statute itself is divisible between the three types of prohibited activity.

Having concluded that O.C.G.A. § 16-10-32(b) is divisible among the three clauses discussed above, we now must consider whether the first clause—which prohibits threatening or causing harm to a person—is itself divisible. Ferguson argues that the first clause is not divisible between threatening economic harm and threatening physical harm. Because threatening economic harm is clearly not a violent felony, Ferguson maintains that his conviction under the first clause cannot categorically qualify as a violent felony. We disagree.

To begin with, the text of the statute suggests that "physical harm" and "economic harm" are two alternative elements, setting forth two crimes, rather than two possible means of committing a single crime. To review, the statute's first clause criminalizes "threaten[ing] or caus[ing] physical *or* economic harm to another person or member of such person's family or household . . . with the intent to hinder, delay, prevent or dissuade any person from . . . attending or testifying . . . ." O.C.G.A § 16-10-32(b) (emphasis added). Unlike the three clauses we found divisible above,

economic and physical harm are not set off by commas. Nonetheless, the similarity between the clause's structure and those statutes that we have previously declared divisible suggests that the statute at issue here establishes physical and economic harm as two alternative elements.

Like the statute in *Oliver*, the clause eschews umbrella terms and instead specifies two distinct types of harm capable of satisfying the statute. The exhaustiveness of the clause and the lack of illustrative examples indicate that the statute contains divisible threat elements. *See Oliver*, 962 F.3d at 1319.

Moreover, like the statute in *Gundy*, O.C.G.A. § 16-10-32(b) states the types of harms in the "alternative and in the disjunctive." In *Gundy*, this Court concluded that a Georgia burglary statute listed three different locational "elements" that "effectively create[ed] several different crimes." 842 F.3d at 1167. The statute in question in *Gundy*, which has since been revised, originally stated:

> A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof.

O.C.G.A. § 16-7-1 (effective until June 30, 2012); *accord Gundy*, 842 F.3d at 1164. As in *Oliver*, we noted that the statute did not contain any single umbrella term, such as "building" or "occupied

structure," and that it lacked the word "include" or a definition providing a "non-exhaustive laundry list of other places or locations." *Gundy*, 842 F.3d at 1166. Instead, we parsed the statute's long clause to contain three alternative locational elements, despite the fact that those elements were not set off by commas: (1) the dwelling house of another, (2) any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another, and (3) within any other building, railroad car, aircraft, or any room or any part thereof. In parsing the statute this way, we relied on the "plain text of the Georgia statute," which listed the three subsets of different locational elements "in the alternative and disjunctive." *Id*. at 1167. We also cited to *Descamps* for the proposition that an example divisible statute is one "stating that burglary involves entry into a building *or* an automobile." *Id*. (emphasis in original) (quoting *Descamps*, 570 U.S. at 257).

Here, O.C.G.A. § 16-10-32(b)'s first clause similarly separates two types of harm by a disjunctive— "[a]ny person who threatens or causes physical or economic harm to another person"—indicating intended divisibility. O.C.G.A. § 16-10-32(b); s*ee also Bates*, 960 F.3d at 1293. Thus, given our precedent, we conclude that although O.C.G.A. § 16-10-32(b) refers to physical and economic harm in the same clause, the clause is nonetheless divisible.

*Mathis*'s third step also points to the statute's first clause as being divisible. As mentioned above, Ferguson's indictment charged him only with threatening physical harm. Had the indictment charged Ferguson with threatening physical *or* economic

harm, it would have been a clear indication that the prosecution did not have to prove one of those alternatives. *See Mathis*, 579 U.S. at 518 (explaining that an indictment that charges a defendant with burgling a "building, structure, or vehicle" lists means of commission rather than alternative elements requiring proof). The same would be true if the indictment used an umbrella term such as "threatening harm." *Id*. Instead, Ferguson's indictment charged only one of the two harms, "[e]xclud[ing] the other type[] of threat[] listed," and indicating that the prosecutor had to prove physical harm to prevail. *See Oliver*, 962 F.3d at 1320 (citing *Mathis*, 579 U.S. at 519). Thus, Ferguson's indictment suggests that the statute lists two divisible elements in the form of alternative harms, each one of which constitutes a separate crime.[3] *Id*. In light of the statute's text and Ferguson's indictment, we conclude that O.C.G.A § 16-10-32(b) is divisible between economic and physical harm.

### C. Applying the Modified Categorical Approach

Because the first clause of O.C.G.A. § 16-10-32(b) is divisible, we apply the modified categorical approach and ask whether Ferguson's conviction for threatening a witness with physical harm has, as an element, "the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i).

---

[3] In at least three other Georgia cases concerning violations of O.C.G.A. § 16-10-32(b), defendants were similarly charged with only one of the two alternative harms. *See Brown v. State*, 745 S.E.2d 699, 705 (Ga. Ct. App. 2013), *aff'd*, 759 S.E.2d 489 (2014); *Palmer*, 682 S.E.2d at 324 (Ga. Ct. App. 2009); *Shelnutt*, 657 S.E.2d at 613 (Ga. Ct. App. 2008).

The Supreme Court has explained that "physical force" in § 924(e)(2)(B)(i) means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140 (emphasis in original). As such, § 924(e)(2)(B)(i) is not satisfied by the "slightest offensive touching," though it may consist "of only that degree of force necessary to inflict pain—a slap in the face, for example." *Id.* at 139, 143. Despite the similarity of the term "physical force" with O.C.G.A. § 16-10-32(b)'s phrase, "physical harm," this does not necessarily mean that the Georgia statute includes the "threatened use of physical force" required by ACCA. *See id.* at 138 ("The meaning of 'physical force' in § 924(e)(2)(B)(i) is a question of federal law, not state law.").

Neither O.C.G.A § 16-10-32(b) nor caselaw interpreting the statute define the term "physical harm." In the absence of a definition, we give the term "physical harm" its plain and ordinary meaning. *See Oliver*, 962 F.3d at 1321 (noting that the rules of statutory construction require courts to "afford the statutory text its plain and ordinary meaning"). As the Supreme Court recognized in *Johnson*, the word "physical" "plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force." *Id.* The Oxford English dictionary defines harm as "[e]vil (physical or otherwise) as done to or suffered by some person or thing; hurt, injury, damage, mischief." *Harm*, *Oxford English Dictionary*, https://www.oed.com/search/dictionary/?scope=Entries&q=harm. The plain meaning of "physical harm" is thus

largely coextensive with the consequence of "violent force," which includes "physical pain or injury." *See Johnson*, 559 U.S. at 140.

Ferguson contends that O.C.G.A. § 16-10-32(b)'s prohibition of threatened physical harm does not include a threat of "physical force" because it may be satisfied by "a threat of a mere unwanted touching." But both this Court and Georgia state courts have defined the term "physical harm" in analogous circumstances as requiring force greater than "mere offensive touching." In *Talamantes-Enriquez v. U.S. Attorney General*, 12 F.4th 1340 (11th Cir. 2021), this Court explained that the Georgia crime of simple battery is "categorically a crime of violence" under the Immigration and Nationality Act ("INA") because "intentionally causing *physical harm* to the victim" requires more than "simple physical contact with the victim." *Id*. at 1351 (quoting *Hernandez v. U.S. Att'y Gen.*, 513 F.3d 1336, 1340 (11th Cir. 2008)) (noting that *Johnson*'s definition of "physical force" was equally applicable under the INA as ACCA). Similarly, Georgia courts have defined "physical harm" in two other Georgia statutes as requiring "a touching that goes beyond insult to the infliction of pain or physical injury" and "intentional physical contact that causes actual physical damage, injury or hurt to the victim." *See Hammonds v. State*, 587 S.E.2d 161, 163 (Ga. Ct. App. 2003) (defining "physical harm" in O.C.G.A. § 16-5-23(a)(2), Georgia's simple battery statute); *State v. Randle*, 781 S.E.2d 781, 783 (Ga. 2016) (defining "intentional physical harm" in O.C.G.A § 17-10-6.2(c)(1)(D), a sexual assault statute). In sum, there is strong evidence that the phrase "physical harm" in Georgia law contemplates more than offensive touching and instead requires the sort

of physical act, capable of creating "injury" and "damage," that satisfies the Supreme Court's definition of "physical force" as used in ACCA. *See Oliver*, 962 F.3d at 1321 (finding that a threat to commit "any crime of violence" is a threat of "physical force" because the term "violence" contemplates "physical force so as to injure or damage.").

Ferguson also maintains that a "threat of physical harm" does not constitute a violent felony because various misdemeanors would qualify as threats or causes of "physical harm" under O.C.G.A § 16-10-32(b). But this argument is without merit. Even assuming that some threat constituting a threat of physical harm under O.C.G.A. § 16-10-32(b) would be a misdemeanor if not for the defendant's intent to interfere with a witness, that does not make the misdemeanor conduct less a threat of physical harm. ACCA merely requires that a "violent felony" *include* a threat of physical force "as an element." § 924(e)(2)(B)(i). It makes no demand that the violent or physical element be responsible for classifying the crime as a felony. In *United States v. Gandy*, 917 F.3d 1333 (11th Cir. 2019), we held that simple battery, which constitutes a felony when committed against jail detainees, counted as a "violent felony" for ACCA purposes. *Id*. at 1339–40. We made no issue of the fact that the "violent" aspect of the felony would be a misdemeanor if not for the additional circumstances of the victim's status. *Id*. Ferguson has given us no better reason to do so here.

In his conclusion, Ferguson briefly argues that his conviction cannot count as a violent felony because ACCA requires that a

violent felony be "punishable by imprisonment for a term exceeding one year," and O.C.G.A. § 16-10-32(b) makes imprisonment optional by allowing punishment either by "imprisonment for not less than two years" *or* by fine. This is not a persuasive argument. By its very terms, ACCA defines a violent felony as one that is *able* to be punished by a year's imprisonment, not one that must be. *See* § 924(e)(2)(B) ("[T]he term 'violent felony' means any crime *punishable* by imprisonment for a term exceeding one year . . ." (emphasis added)). O.C.G.A. § 16-10-32(b) explicitly allows for such imprisonment and thus meets ACCA's requirement.

In sum, a conviction under O.C.G.A. § 16-10-32(b) for threatening physical harm includes a "threat of physical force" as an element because "physical harm" is a phrase that the dictionary, as well as the Georgia Supreme Court, defines similarly to how the Supreme Court has defined "physical force" as used in ACCA. *See Hammonds*, 587 S.E.2d at 163; *Johnson*, 559 U.S. at 140. Accordingly, we conclude that Ferguson's conviction under O.C.G.A § 16-10-32(b) qualifies as a violent felony under ACCA's elements clause.

## IV.   CONCLUSION

For the foregoing reasons, we affirm Ferguson's sentence.

**AFFIRMED.**

22-12013              JORDAN, J., Concurring              1

JORDAN, Circuit Judge, Concurring.

The "categorical approach" has been both decried and defended. *Compare, e.g., United States v. Doctor*, 842 F.3d 306, 313–16 (4th Cir. 2016) (Wilkinson, J., concurring), *with, e.g., United States v. Faust*, 853 F.3d 39, 61–66 (1st Cir. 2017) (Barron, J., concurring). But given recent Supreme Court decisions like *United States v. Taylor*, 596 U.S. 845, 850–51 (2022), it looks like that approach "is here to stay," at least for the foreseeable future. *See* Amit Jain & Phillip Dane Warren, *An Ode to the Categorical Approach*, 67 UCLA L. Rev. Discourse 132, 151 (2019).

The Supreme Court has given us some methods for differentiating between "means" and "elements" in the "modified categorical" approach for divisible statutes. *See Mathis v. United States*, 579 U.S. 500, 517–19 (2016). *See also Descamps v. United States*, 570 U.S. 254, 286 (2013) (Alito, J., dissenting) ("The feature that distinguishes elements and means is the need for juror agreement[.]"). But this guidance, to me, is largely unhelpful in the really difficult cases (e.g., those where there is no caselaw from the state courts to help with the divisibility analysis). In such cases, differentiating between means and elements can sometimes feel like a coin flip.

In trying to answer the means/elements question, I find it helpful to analyze whether the types of conduct prohibited by the statute are qualitatively different in terms of the societal and personal harms that are proscribed. If they are different in kind—like those resulting from battery and sexual assault—the statute will likely be divisible. But if the harms are similar—like the prohibited

entry into a home, office, warehouse, building, apartment, or condominium, or the different types of narcotic drugs that can't be possessed—then the statute is probably not divisible. *Cf.* Paul H. Robinson, *Reforming the Federal Criminal Code: A Top Ten List*, 1 Buff. Crim. L. Rev. 225, 233 (1997) ("The mark of a systematic approach to creating and defining offenses is a code that organizes offenses conceptually: offenses against the person, offenses against property, etc., and within each category additional categories.").

Here, threatening or causing physical harm is conceptually different from threatening or causing economic harm in the first clause of O.C.G.A. § 16-10-32(b). In the world of criminal law, offenses against one's person are generally viewed as different than offenses against one's property. The former category usually entails harm (or potential harm) to a human being, while in the latter category such harm (or potential harm) is normally just a possible collateral consequence. *See* Connor Sunderman, *Violence Against Property: The Breaking Point of Federal Crime of Violence Classifications*, 122 Colum. L. Rev. 755, 789–90 (2022).

With these thoughts, I join Judge Lagoa's opinion for the Court.